State v. Bechel.

THE STATE OF NEBRASKA, EX REL. THE OMAHA AND
SOUTH OMAHA STREET RAILWAY CO., PLAINTIFF,
v. WM. F. BECHEL, MICHAEL LEE, THOMAS J.
LOWRY, JACOB M. COMISMAN, FRANK J. KASPAR,
LEAVITT BURNHAM, ALBERT M. KITCHEN, PAT-
RICK FORD, CHARLES CHENEY, ISAAC S. HASCALL,
WM. I. KIERSTAD, ADAM SNYDER, JEFFERSON W.
BEDFORD, CHAS. L. VANCAMP, WM. H. ALEXAN-
DER, JOHN M. BOYD, FREELAND W. MANVILLE,
FRANK E. BAILEY, AND JOSEPH R. SOUTHARD,
DEFENDANTS.

**Street Railroad:** CONSENT OF ELECTORS: VOTE REQUIRED.
Where the question of giving consent to a street railway com-
pany to construct and maintain a street railroad upon the
streets of the city of O. was submitted to the electors of said
city on the day of the general city election, and the ballot upon
that proposition was taken at the same place, by the same elec-
tion officers, and but one poll list made, and the votes were can-
vassed and returned, in some of the precincts and wards, upon
the same tally sheet and return; but in all of the wards a sep-
arate ballot box was prepared into which the vote upon the
proposition was deposited, but without other formality to sepa-
rate the vote from the vote of the general election, it was held
that in order to give the required consent the affirmative of the
proposition must receive a majority of all of the votes cast at
such election.

ORIGINAL application for mandamus.

*Congdon, Clarkson & Hunt,* for relator, cited: *People v.
Warfield,* 20 Ill., 163. *People v. Garner,* 47 Id., 246.
Angell & Ames Corp., Secs. 499–500. *State v. Mayor,* 37
Mo., 272. *State v. Binder,* 38 Id., 450. *St. Joseph v.
Rogers,* 16 Wall., 644. *County of Johnston,* 5 Otto, 369.
*Sanford v. Prentice,* 28 Wis., 358.

*J. L. Webster,* for respondent, cited: *Harshman v. Bates
County,* 92 U. S., 569. *State v. Winklemien,* 35 Mo., 103.

REESE, J.

This is an application for a peremptory writ of mandamus to the council and city clerk of the city of Omaha for the purpose of compelling them to certify the result of an election held in said city on the 3d day of May, 1887, at which it is alleged that a majority·of the electors of said city had given their consent to the construction and operation of a street railroad, by plaintiff, upon the streets of the city. The cause is submitted upon the petition and motion for the writ in connection with a stipulation of such material facts as do not appear in the petition. These facts may be briefly stated as follows:

Plaintiff is a corporation, organized under and by virtue of the laws of this state, for the purpose of constructing and operating a street railroad on and through certain streets of the city of Omaha. The defendants are the councilmen and city clerk of the city of Omaha, which is a municipal corporation organized under the laws of the state. That at the time of the passage and approval of the ordinance hereinafter referred to and the holding of an election thereunder, it was a city of the first class, but that it is now known as a city of the metropolitan class—so designated by law—and that defendants, councilmen, are the successors in office of the councilmen while the city was denominated a city of the first class. That prior to the 3d day of May, 1887, plaintiff made application to the city council for the passage of an ordinance providing for the submission to the electors of the city the question of consent to the construction and operation of a street railroad by said plaintiff through certain streets therein, and that thereupon the city council passed an ordinance providing for such submission and requesting the mayor to call an election that the question might be voted upon. The mayor gave notice, as provided by law, that an elec-

tion would be held on the 3d day of May, 1887, that being the day of the general city election.

The registry of voters for the city election showed that there were 10,045 names registered. There were 8,146 votes cast at the general election. The number of votes cast upon the question of consent to plaintiff to construct and operate its road was 1,650, of which 1,470 were in the affirmative and 180 in the negative. There were but the usual number of judges and clerks of election. No separate poll list of those who voted upon the question submitted was kept. A separate ballot box was prepared, and when an elector came to the polls to vote, if his name was upon the list of registered voters, or if he proved himself to be an elector, he was permitted to vote, his name was checked off the registration list and place on the duplicate poll books. This was done whether he voted a ticket for the general election, and for or against the proposition submitted, or simply on the proposition, but one poll list being made. The ballot box for the general city election alone determined the number of votes cast at that election, and the ballot box for the proposition alone determined the number of votes cast on the proposition. At the close of the polls a tally sheet was made, and the votes canvassed in the usual way. In some precincts and wards, separate tally sheets were prepared and used in canvassing the votes upon the proposition submitted, while in others the tally sheet of the general election was used. The result being certified to the city council, they refused to cause the city clerk to certify to plaintiff the necessary consent, but declared that the consent of the electors of the city had not been given. Plaintiff, by its chief officer, demanded the certificate of defendants, but compliance was refused.

It is contended on the part of plaintiff that the proposition submitted received the consent of a majority of the electors, for the reason that a majority of the votes cast upon this particular question were in the affirmative, and

that the vote deposited in the ballot box prepared for the reception of ballots cast upon the proposition should, for the purpose of the canvass, be taken as the full vote of the city, while it is contended by defendant that consent in such case cannot be considered as given unless it appears that a majority of all the electors in the city, as shown by the registry, is in favor of such consent. It is also contended that if such is not the law, yet it appears that the affirmative of the proposition did not receive a majority of the votes cast at the election, and that therefore the writ should not be awarded. The former contention of defendant is founded, in part, upon the language of sections one and two of the article of the constitution of the state entitled "Miscellaneous corporations." These sections are as follows:

"Section 1. No corporation shall be created by special law, nor its charter extended, changed, or amended, except those for charitable, educational, penal, or reformatory purposes, which are to be and remain under the patronage and control of the state, but the legislature shall provide by general laws for the organization of all corporations hereafter to be created. All general laws passed pursuant to this section may be altered from time to time, or repealed.

"Section 2. No such general law shall be passed by the legislature granting the right to construct and operate a street railroad within any city, town, or incorporated village, without first requiring the consent of a majority of the electors thereof."

It is claimed that this provision requires the consent, affirmatively given, of a majority of all the electors of the city before the franchise can be said to be given, and that it will not do to say that a majority of the votes polled at an election held for the purpose of voting on a question submitted, if cast in the affirmative, will give the required consent, unless such majority constitutes a majority of all

11

the electors in the city. While, as we view this case, a decision upon this question is not essential to a determination, yet it is deemed proper to say that upon a full examination of the question, we are all of the opinion that this section does not go to the length contended for. It is believed that where an election is held upon such submission and a majority of the votes cast are in favor of the proposition, this should be taken as giving the required consent. For a review of the authorities upon this question, in addition to those cited by counsel, we cite the case of *The State, ex rel. Stevenson, v. Babcock,* 17 Neb., 188.

But our attention must be given to the second contention of defendant, *i. e.,* that the affirmative of the proposition did not receive a majority of all the votes cast at the election, and that it was, therefore, defeated.

Section five of article eight of chapter seventy-two of the Compiled Statutes provides in substance that elections held for the purpose of voting on propositions of the kind now under consideration, shall be held at the time designated in the notice, and as other elections are held, the returns canvassed, and the result declared, " and if a majority of the votes cast at *such election* shall be in favor of the constructing and operating of such proposed street railroad " the council shall cause the clerk to make the certificate, etc. It is impossible for us, by any system of logical reasoning, to say that the election held in the city of Omaha on the 3d day of May, 1887, was other than one election. There were but the usual number of judges and clerks, but one poll list, and in some precincts but one return. If we say there were two elections, to-wit: the general city election, and the election upon the proposition submitted, to which of these can we say the poll list, or list of voters actually voting, belonged? Most certainly to the general election. If that is true, to what record can we apply for a list of those who voted at the other election, *i. e.,* the one in which votes were cast on the prop-

osition? How could that election be contested upon the ground that illegal votes were cast by those who were not electors? Obviously it could not be successfully done. How can it be said that the fact that another ballot box was prepared, into which the ballots were deposited to be counted as cast upon the proposition in question, would produce a different legal result than if the proposition had been written or printed on the tickets for the general election, and only 1,650 of the voters had voted upon the question. We confess our inability to divide or separate the election of the day named, and must hold that it constituted but one election. That being the case, " a majority of the votes cast at such election " were not " in favor of the constructing and operating such proposed street railroad," as required by the law of the state, and the consent of a majority of the electors was not given.

The writ, therefore, must be denied.

JUDGMENT ACCORDINGLY.

THE other judges concur.