WILLIAM J. BRYAN ET AL., APPELLEES, v. CITY OF LINCOLN ET AL., IMPLEADED WITH ELMER B. STEPHENSON, APPELLANT.

FILED FEBRUARY 16, 1897. No. 8671.

1. **Municipal Bonds: VOTE OF PEOPLE.** The clause, "When the same shall have been authorized by a vote of the people," contained in section 67, subdivision 21, article 1, chapter 13a, Compiled Statutes, under heading "Cities of the First Class," means authorized by a majority of the voters of the city.

2. ———: ———. A proposition to authorize the issuance of funding bonds was submitted to the electors of a city, pursuant to the provisions of such section of the statutes, at the same time and place as the general city election. *Held,* Under the facts shown, to be but one election; that the presumption is that all the electors voted at such election, and the proposition, to work its adoption, must have received a majority of all the votes cast at such election.

APPEAL from the district court of Lancaster county. Heard below before HOLMES, J. *Affirmed.*

*Lambertson & Hall,* for appellant.

*Boehmer & Rummons, contra:*

A proposition submitted to the voters of a munici-
pality at a general election must receive a majority of
the votes cast at such election in its favor, in order to be
carried.   As the bond proposition failed to receive a ma-
jority of the votes cast at the election, it did not carry
and hence all subsequent acts of the council relative
thereto are void.   (*State v. Anderson,* 26 Neb., 517; *State
v. Bechel,* 22 Neb., 158; *State v. Benton,* 29 Neb., 469;
*Douglas County v. Keller,* 43 Neb., 644.)

*A. S. Tibbets,* also for appellees.

HARRISON, J.

The appellees herein, in their character as residents
and taxpayers of the city of Lincoln, instituted this ac-
tion in the district court of Lancaster county to restrain
or enjoin the execution and delivery by the city, the
mayor and city council thereof, of certain funding bonds
in the aggregate sum of $534,500 to Elmer B. Stephenson,
the alleged purchaser of such bonds.   Pleadings were
filed and issues joined of which there was a trial, which
resulted in a judgment by which the execution and de-
livery of the bonds were perpetually enjoined.   Elmer
B. Stephenson of defendants in the trial court has ap-
pealed to this court. .
The proposition of the issuance of the bonds was sub-
mitted to a vote of the people, and of the questions at
issue in the district court was the one, Did the bond
proposition receive the requisite number of votes to ef-
fect its adoption?   That it did not was asserted by ap-
pellees and is urged in the briefs filed in this court; and
on oral argument counsel for appellees especially di-
rected attention to this branch of the case.   The propo-
sition of the issuance was, pursuant to the provisions of

the law, submitted to a vote of the electors of the city.
Section 67, subdivision 21, chapter 13a, article 1 of the
Compiled Statutes, 1895, page 208, in which is embodied
the grant of power to the officers of a municipality of the
class to which the city of Lincoln belonged to issue fund-
ing bonds, reads as follows: "To provide for issuing
bonds for the purpose of funding any and all indebted-
ness now existing or hereafter created of the city, now
due or to become due, when the same shall have been
authorized by a vote of the people; *Provided,* That the
mayor and council shall not fund any bonded debt at a
higher rate. Such bonds shall be redeemable after ten
years, at the option of the city." The phrase "when the
same shall have been authorized by a vote of the people"
is the portion of the section with which we have here
more particularly to deal. Authorized by the vote, in this
connection, can but mean by a majority, as there are but
two answers to be made to the question submitted, an
affirmative and a negative; and to be authorized, the
matter of the proposition must receive the greater num-
ber or majority of the votes. It could not be a plurality,
as might be when there are more than two candidates for
office, and the one receiving the highest number of votes
is elected, but may not have received a majority of the
votes. The word "people," as used here, must mean elect-
ors or voters. It can have no other signification, and the
section in which it occurs have intelligible, reasonable,
and sensible force. It was stated in an act that towns
and cities might submit a proposition to the vote of the
"inhabitants." The word "inhabitants" was held to mean
voters. (6 Am. & Eng. Ency. of Law. p. 445; *Walnut v.
Wade,* 103 U. S., 683.) The phrase under consideration
in the case at bar must necessarily be held, from the act
and connection in which it appears, to refer to the vote
of the people of the city of the class to which the act is
applicable. A fair reading, then, of the phrase would
be "authorized by a majority of the vote of the electors
or voters of the city." It appears that an ordinance was

passed by the city council in which provision was made
for the submission of the proposition of the issuance of
the funding bonds to a vote of the electors of the city,—
and we will here digress to say that the council probably
indicated its construction of the law with reference to the
vote necessary to carry the subject of the submission in
the ordinance, as did also the mayor in the notice or
proclamation published of the election, for it was stated
in each that if the majority of the votes cast at the elec-
tion were favorable to the proposition, the mayor and
council should have power to issue the bonds.   But re-
turning again to the question proper, it appears that
though in some portions of the ordinance the election
therein provided was denominated a "special election,"
it was fixed to be held on Tuesday, the 3d day of April,
1894, which was the day of the general election for city
officers, and the vote on the bond proposition was to be
presided over by the same judges and clerks of election
as the vote on officers at the general city election.   The
vote was taken at the same polling places in the city, the
same registration lists were used, the same voting booths.
Indeed, no measures were used which would mark the
vote on the bond proposition as a separate election, ex-
cept separate ballot boxes were used and probably sepa-
rate poll lists.   This last does not very clearly appear
from an inspection of the evidence.   This constituted but
the one election when considered for the purpose of de-
termining how many persons presented themselves and
participated as voters in an election at that time and
place.   (*State v. Bechel*, 22 Neb., 158.)

The next question which presents itself for considera-
tion and adjudication is whether, under the provision we
have quoted in regard to an election on the proposition
to issue funding bonds held at the same time and place
as the general election of the officers of the city, and prac-
tically as a part of that election, to affirmatively indorse
the proposition, it required but a majority of the votes cast
for or against it, or did it require a majority of the votes

cast at the election? No inherent right or power existed in the city to issue these or any other bonds. To exist it must be conferred by statute. (*State v. Babcock*, 21 Neb., 187.) If issued, they created a debt which is in effect a lien upon the taxable property of the citizens of the municipality. (*Fullerton v. School District*, 41 Neb., 601.) It is but right and just that the provisions of the law regulating the procedure in the preliminaries or precedent conditions to be fulfilled in the authorization of their issuance, should be the subjects of fairly strict construction, and if a doubt arises or is entertained in any particular it should be resolved in the interest of regularity and fullness of compliance with such requirements. An application of this rule in the present instance leads us to the conclusion that to work the adoption of the proposition submitted it was necessary that a majority of all the votes cast at the election be favorable to it, and not only a majority of the ballots cast for or against the proposition. It required, as we have seen by giving to the portion of the section of the statute in reference to the vote its evident, ordinary, and plain import, a majority of the votes of the electors of the city to authorize the proper officers to issue bonds, and it is but fair and reasonable to take the highest number of voters voting at the election on the selection of a person to fill any office for the filling of which the election was being held or for or against any proposition regularly submitted and voted upon, as constituting the body of the electors of the city. The registration lists would not furnish a perfect total of the number, as the body of the voters necessarily changes with the passing of the days, some who have registered probably moving away from the city and new ones coming in who are unregistered, and there would also be many others who do not register, and probably as fair a test of the number of the electors of the city for the purpose for which it is desired in the determination of the question now under consideration is to fix it at the highest number who voted on the selection of any one

office or matter on which an expression of the voters was taken at the then election.   It must be presumed that the framers of the section of the statute, by virtue of which this matter of the bond issue was submitted, had it in contemplation that all the electors would vote (as indeed, if possible, they all should), and that a majority of those voting should settle the question.   (*Slingerland v. Norton*, 61 N. W. Rep. [Minn.], 322.)   To adopt any other construction would cast it within the realm of doubt and uncertainty and involve inquiries whether there were electors who for any reason had not appeared at the polls and voted, would in fact lead to divers, many, and endless questions, invite contests in elections, and, in fact, would seriously cripple or impede, if not entirely destroy, any intended operation of the law.   (*People v. Warfield*, 20 Ill., 160.)

In the case of *People v. Wiant*, 48 Ill., 263, the question to be decided was whether a vote taken on the proposition had authorized a removal of the county seat from one town to another.   In the law under the provisions of which the submission was made it was stated that if it should appear from a canvass of the votes that a majority of the legal voters of the county had voted for the removal to Wheaton, then that place should be the county seat of the county.   The election was held at the same time as the election for circuit judge.   A majority of the votes cast on the question of the removal of the county seat was favorable thereto, but not a majority of the whole number cast at the election, as appeared from the poll on the election of the circuit judge.   It was held: "Where an election on the question of the removal of a county seat happens to be held at the same time there is another election as for a circuit judge, the vote cast on the single question of removal will not alone govern as to whether a majority of all the legal votes of the county were given in favor of removal, but it must appear that a majority of all the votes cast at that election were so given."   And it was further said in the body of the opin-

ion: "In this case it appears that the majority of the votes cast at the election on the question were for removal, but the clerk's certificate does not show that those voting in its favor are a majority of the votes cast at that election. * * * In this case, however, there was, at the same time, an election held for circuit judge, which was a regular election. We therefore have, in this case, additional means of ascertaining the whole number of voters of the county. If the return of the various poll books of the county showed a larger number of votes cast for circuit judge, or other officer, than were cast for and against removal of the county seat, then that should be taken as the number of voters of the county; and it should appear that a majority of the voters at that election had cast their votes in favor of removal before the county seat could be changed. It is not the vote cast upon that single question that is to govern where it occurs at any other election held at the same time, but it must appear that a majority of all the votes cast at that election are in favor of removal." (*State v. Winkelmeier*, 35 Mo., 103; *State v. Benton*, 29 Neb., 460; *Stebbins v. Judge of Superior Court of Grand Rapids*, 66 N. W. Rep. [Mich.], 594.)

In the decision in the case of *People v. Brown*, 11 Ill., 478, in considering a section of the constitution of the state of Illinois wherein it was stated: " 'The general assembly shall provide by a general law for a township organization, under which any county may organize whenever the majority of the voters of such county, at any general election, shall so determine,' " it was observed: "At the ensuing general election in the county of Woodford one hundred and fifty-three votes were given for and one hundred and seven votes against township organization, while more than six hundred votes were cast in the county. The question arises on this state of case whether the township organization was legally adopted by the people of that county. The section of the constitution before recited is free from all doubt or uncertainty. The language is clear and explicit, and ad-

mits of but one meaning.  It does not mean a majority of those voting on the question to be submitted, but a majority of all the legal voters of the county.  The right of a county to organize under a law to be passed in pursuance of this provision of the constitution is made expressly to depend upon an affirmative vote of a majority of all the citizens of the county entitled to vote on the question."

We are fully aware that there is a line of decisions which announce a doctrine differing radically from the general rule which we follow in the present case, but some of such decisions have been considered by this court and the doctrine disapproved and a refusal to follow it expressed (*State v. Commissioners of Lancaster County*, 6 Neb., 474; *State v. Babcock*, 17 Neb., 188), and we now indorse what was then stated in this regard.

In our own state, in the case of *State v. Commissioners of Lancaster County, supra*, it appeared that the proposition of township organization had been submitted to the voters of Lancaster county at a general election, and that a majority of the votes cast on the proposition were favorable thereto, but not a majority of all the votes cast at the election.  The decision involved a construction of section 5, article 10, of the constitution, under which the proposition was submitted, which read as follows:  " 'The legislature shall provide by general law for township organization, under which any county may organize whenever a majority of the legal voters of such county, voting at any general election, shall so determine;' " and it was then said by GANTT, J., who wrote the opinion:  "I think that section 5, article 10, of the constitution must be construed according to the plain meaning of the words used, and that the language employed therein is mandatory; and therefore, as the affirmative vote on the question submitted was less than a majority of all the legal voters voting at the general election, the proposition to adopt township organization was defeated."

In the case of *State v. Babcock, supra*, there was under

consideration section 1 of article 15 of the constitution, which provides for the submission of amendments to the constitution proposed by the legislature to a vote of the electors of the state, and for publication of the proposed amendments for a prescribed time "immediately preceding the next election of senators and representatives, at which election the same shall be submitted to the electors for approval or rejection, and if a majority of the electors voting at such election adopt such amendments, the same shall become part of this constitution." In the opinion written by MAXWELL, J., appears the following statement in regard to the facts: "It is agreed by the parties that the whole number of votes cast at the election in November, 1884, was 134,000 for governor and other state officers, and 132,000 for senators and representatives; and in favor of the proposed amendment 51,959, and 17,766 against the same." It was held that the proposed amendment, to be adopted, must have received a majority of the whole number of votes cast at the election, and as it had not, it was not adopted. For a decision in regard to a similar provision of the constitution of the state of Ohio, on the same subject, see *State v. Foraker*, 23 N. E. Rep., 491.

In the case of *State v. Bechel, supra*, the question was of the vote necessary to give consent to a street railway company to construct and maintain a street railway on the streets of Omaha. The proposition was submitted and voted upon at the same time and place as the general city election. The proposition received a majority of the votes cast on that particular question, but not a majority of the largest number of votes cast at the election on any one office or matter submitted, and hence it was held by the court not carried. The submission was made under the following provisions: Section 2 of the article of the constitution entitled "Miscellaneous Corporations," in which it was stated that the legislature should pass no general law "granting the right to construct and operate a street railroad within any city   *   *   *   without first

requiring the · consent of a majority of the electors thereof," and section 5 of article 8 (now 7), chapter 72, Compiled Statutes, in which the requirement in regard to the vote necessary to carry the question was: "And if a majority of the votes cast at such election shall be in favor of," etc.

In the case of *State v. Anderson*, 26 Neb., 517, the language of section 30, part 1, chapter 18, Compiled Statutes, wherein it states, " 'If it appears that two-thirds of the votes cast are in favor of the proposition,' " was held to require for the adoption of a proposition to which the section had reference a number of votes equal to two-thirds of the votes cast upon any one question, or for all the candidates for any one office, at the election at which the proposition was submitted. (See, for approval of general principle, *Douglas County v. Keller*, 43 Neb., 635; and for approval of the doctrine of *State v. Anderson*, *supra*, in regard to the section of the statute therein considered, see *Stenberg v. State*, 50 Neb., 127.)

In the case of *State v. Benton*, 29 Neb., 460, in which the facts in respect to the submission of the question of the issuance of bonds ·by the school district of the city of Omaha, a metropolitan city constituting one school district, and the manner of conducting the election, etc., were very similar to the circumstances, in the like connection, of the case at bar, there were two provisions of the law applicable to and governing the vote necessary to be cast to carry the proposition under consideration, worded as follows: " 'A majority of the ballots polled at such an election shall be for issuing bonds,' " and " 'The electors shall sanction the issuing of said bonds in the manner aforesaid.' " The submission was at the same time and place as a regular city election, and the question received a majority of the votes cast as to it, but failed to receive a majority of all the votes polled for some of the offices to be filled at the regular city election, and it was held "not sanctioned by the vote given."

The case of *State v. Roper*, 47 Neb., 417, involved the

consideration of a special election on the proposition of removal of a county seat. It was an election held specially for the purpose of determining the one question, and there was no voting for any person or anything more than the proposition of removal. The decision of this court finally hinged on the determination of the point of whether certain ballots should be counted as votes cast or not. The opinion in the Roper case has no bearing on the question now under consideration, except to the extent that it approves the general rule that when a proposition of the nature of the one out of the vote upon which the controversy in the case arose is submitted at a general election, the highest number of votes cast on any proposition or for any candidate is assumed to be the total number, of which the requisite majority must be obtained.

We have thus referred to the foregoing decisions of this court for the purpose of calling attention to the fact that through and in each and every one of them there is the element or principle that if a proposition is submitted at a general state or municipal election, under a law which requires for the adoption of the proposition a majority of all the votes cast, it must receive more than one-half of the total number of votes polled at such election on any matter or the filling of any office on which a vote is taken. The proposition to issue the bonds is shown to have received a majority of the votes cast for and against it, but not a majority of the votes cast at the election at which it was submitted, hence was not adopted. The power of the officers of the city to issue the bonds depended on the authorization of such action by "the vote of the people," and not on any declaration of the result of the election by the officers, or any of them, or any other person or persons; and the authority not having been granted by the vote taken, they could not issue them. (*Douglas County v. Keller*, 43 Neb., 635; *Stenberg v. State*, 50 Neb., 127.)

It appears that the bonds had been prepared and con-

tained a clause that they should be "payable in United States gold coin, government standard of present weight and fineness, or its equivalent," or were, as prepared, what are commonly known as "gold bonds," and the question is presented here whether under a general authorization for the issuance of the bonds, if conferred, would the bonds as prepared be valid?   Since the decision of the question we have heretofore discussed disposes of the case, and a determination of this one would not change the result, we deem it unnecessary at this time to consider and decide the further query.   It follows that the judgment of the district court is

AFFIRMED.