*W. J. Sheldon* for complainant.

*J. Lightfoot* for respondent.

---

# IN THE MATTER OF THE APPLICATION OF J. LIGHTFOOT FOR A WRIT OF MANDAMUS AGAINST DAVID KALAUOKALANI, JR., CLERK OF THE CITY AND COUNTY OF HONOLULU, TERRITORY OF HAWAII.

RESERVED QUESTION FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED OCTOBER 27, 1914.          DECIDED NOVEMBER 4, 1914.

ROBERTSON, C.J., WATSON AND QUARLES, JJ.

STATUTES—*primary election—construction.*

The proviso to section 16, Act 151, S. L. 1913, in the following language, to wit, "Provided, however, that any candidate receiving the votes of a majority of the registered voters voting of the district in which he is a candidate shall be thereby duly and legally elected to the office for which he is a candidate at such primary," construed to require a majority of the votes voted at such primary for all purposes, and not merely a majority of those voting for candidates for the particular office.

In re Lightfoot, 22 Haw. 293.

SAME—*interpolation in statute.*

Statutory construction permits the implication of words apparently intended for the purpose of upholding and giving force to the legislative will, but does not authorize the interpolation of conditions into a statute—additional terms—not found in the statute considered as a whole.

OPINION OF THE COURT BY QUARLES, J.

At the primary election held on the 12th day of September, 1914, under the provisions of Act 151, S. L. 1913, John W. Cathcart and George A. Davis were candidates on the republican ticket, and the petitioner was a candidate on the democratic ticket, for the office of city and county attorney for the city and county of Honolulu. At said primary election there were cast for the various candidates for delegate to Congress in the city and county of Honolulu votes aggregating a total of 7,182. For the office of city and county attorney, the votes were: Cathcart, 3,575; Davis, 1,533, and petitioner, 1,769, making an aggregate of 6,877. Petitioner tendered the necessary fee to the respondent in order to have his name placed upon the official ballot for the election to be held November 3, 1914, which respondent declined to accept. The respondent has issued to said Cathcart a certificate of election at the said primary election to the said office of city and county attorney, and declared his intention to leave off of the official ballot the name of the petitioner as a candidate for city and county attorney for the approaching general election. The petitioner filed in the circuit court his petition for a writ of mandamus to compel the respondent city and county clerk, to print upon the official ballot for the said approaching general election, the name of petitioner as the democratic candidate for the office of city and county attorney for the city and county of Honolulu, and other relief. An alternative writ issued directing the said respondent to place the name of petitioner as the democratic candidate for said office upon the said ballot, or show cause why he should not do so. To the alternative writ the respondent

made return stating in detail the facts as above stated, and praying that the alternative writ be discharged, and the peremptory writ sought be denied.   The honorable circuit judge reserved the question "Shall the peremptory writ herein prayed for, issue?" to this court, for determination.   There is no disagreement between the petition and the return as to the facts.

The reserved question requires a construction of the proviso to section 16 of said Act 151, S. L. 1913, with a view of determining, whether, in order to elect to the office, as contradistinguished from a nomination as a candidate for the particular office, it was necessary for the said Cathcart to receive a majority of all of the votes cast at the said primary of the city and county of Honolulu, or only a majority of the votes cast for that particular office.   Section 16 of said act reads as follows:   "The person receiving the greatest number of votes at a primary as a candidate of a party for an office shall be the candidate of the party at the following election, and any non-partisan candidate receiving at least twenty (20) per cent. of the votes of registered voters cast at such primary shall also be a candidate at the following election.   Provided, however, that any candidate receiving the votes of a majority of the registered voters voting of the district in which he is a candidate shall be thereby duly and legally elected to the office for which he is a candidate at such primary."   The act provides a scheme for the selection of candidates for the various political parties, and non-partisan candidates, for the next general election to follow, and all of the provisions of the act relate to the selection of such candidates, and not to the election of candidates to office, with the exception of said proviso, a fact important to be kept in mind in determining what the legislature meant when it provided that, "any candidate receiving the votes of a majority of the registered voters voting of the district in which he is a candidate shall be thereby duly and legally elected to the office for which he is a candidate at such primary."   The query arises: What did the legislature mean by the words "a majority of the

registered voters voting of the district?" We are assisted to the natural answer by the last three words of the proviso, "at such primary," found in the same sentence. There is no doubt as to what voters were to be considered. The statute fixes that beyond question by saying "the registered voters voting of the district." In other words, voters who had registered but did not vote at the primary are not to be considered, but only those who voted. Those who voted where, and when? The answer to this is found in the last three words of the proviso, to wit, "at such primary." This is the obvious intent of the words used. If the legislature had intended that a vote less than a majority of all of the registered voters who vote at the primary, as, for instance, a majority of those who vote for the particular office, should elect, it would doubtless have said so, which would have been a very simple matter. But failing to say that, and having provided that a candidate receiving "a majority of the registered voters voting of the district in which he is a candidate shall be thereby duly and legally elected to the office for which he is a candidate at such primary," it was thereby intended that the majority required was that of the entire number of voters voting at the primary, and not a majority of those voting for any particular office. This conclusion is strengthened by the language of the sentence in the same section immediately preceding the proviso, wherein it is provided that a *"non-partisan candidate receiving at least twenty (20) per cent. of the votes of registered voters cast at such primary shall also be a candidate at the following election."* Throughout the entire act only one primary is provided for to be held on the second Saturday of September, 1914, and thereafter biennially, in the city and county of Honolulu, the time being fixed in section 3 of the act, and the same section also providing that "No person shall be a candidate for the ensuing general or county election unless he shall have been nominated at the primary next prior thereto." The act provides the manner of conducting the primary and the form of ballot, the names of the candidates of all parties, and non-parti-

In re Lightfoot, 22 Haw. 293.

san candidates, for all of the different offices, to be printed on the ballot for the primary. At the oral argument counsel for one party gave a splendid illustration, in the form of a hypothetical case: A primary is held in a county at which three thousand votes are cast. One thousand vote for the nomination of candidates for county clerk, but do not vote for the nomination of candidates for any other office. One thousand vote for the nomination of candidates for sheriff, but do not vote for the nomination of candidates for any other office. And the remaining thousand vote for the nomination of candidates for the office of county attorney, but do not vote for the nomination of candidates for any other office. A candidate for the last named position receives five hundred and one votes, a bare majority of the votes cast for nomination to the office for which he is seeking the nomination. Has he received the nomination as a candidate for his party at the ensuing election, or has he been elected to the office, thus dispensing with the general election to follow so far as this particular office is concerned? According to the contention of the petitioner he has been nominated as his party candidate, but has not been elected. According to the contention of the respondent he has been elected to office, and not nominated, as a candidate for the office, although he has only received one-sixth of the votes cast plus one. There is nothing in the language of the statute which indicates an intention on the part of the legislature in the said proviso that a minority of the voters who vote at the primary shall be sufficient to elect a candidate to office. To so construe it would be to add to the terms of the statute, which this court is not authorized to do. Statutory construction permits the implication of words apparently intended for the purpose of upholding and giving force to the legislative will, but does not authorize the interpolation of conditions into a statute—additional terms—not found in the statute considered as a whole. We are therefore constrained to conclude that what was intended by the language used in said proviso in regard to the majority vote necessary to elect one

who is seeking a nomination as a candidate for an office, to the office, at the primary, is a majority of all of the voters voting at the primary for any purpose, and not merely a majority of those voting for the nomination of candidates for the particular office for which he seeks a nomination. It must also be kept in mind that by the provisions of said section 16 the vote required to nominate a candidate for a particular office is the highest vote cast for any candidate of his party for that particular office, which may be a very small minority. The object and purpose of the statute is the selection of candidates to represent the different political parties, and non-partisan candidates, at the next ensuing general election, and to place the power to do so directly in the hands of electors. The idea of electing any one to an office at such primary is apparently an afterthought, interjected into the act in the form of the said proviso; and, taking the language of the act as a whole, the reasonable presumption is, that the legislature came to the conclusion that if a candidate for the nomination of any party, or for nomination as a non-partisan candidate, for any certain office, was so popular that he should receive a majority of all of the votes cast at the primary in the district in which he is a candidate, that the people having expressed such decided preference for this particular candidate, that it would be unnecessary to again test the will of the voters in that regard. But the language used shows that the legislature intended that in order to elect a particular candidate for a certain office at such primary, and therefore dispense with the general election so far as such office is concerned, that the candidate should be the choice of a majority of all the registered voters voting at the primary.

Many authorities have been cited from various States upon the question under consideration. None of the decisions are exactly in point, in that in none of them is the language of the constitution or statute under which the election was held identical with the language used in our statute. A number are cited to the effect that where the creation of a county, or school, or the

In re Lightfoot, 22 Haw. 293.

imposition of a tax, or incurring a public indebtedness, or amending a constitution, or calling a constitutional convention, is submitted to the voters with the requirement that it shall be assented to or acquiesced in by a majority of the voters of the State, county or district in which submitted, that a majority of those voting upon such question, though not a majority of the entire vote, if in favor of the proposition submitted, is sufficient to carry it; and that those who fail to vote upon the question are presumed to have assented to the proposition. Of this class of cases that of *County of Cass* v. *Johnston,* 95 U. S. 360, is a fair sample. In that case a special election was held for the purpose of voting on the question of giving township aid to a railroad. Under a provision in the state constitution, such aid could not be extended "unless two-thirds of the qualified voters * * * at a regular or special election to be held therein, shall assent thereto." The court held that those who did not vote *assented* to the expressed will of the majority who did vote, that vote being in the affirmative. So in *Green* v. *State Board of Canvassers,* 5 Idaho 130, where the question of ratifying an amendment to the state constitution was submitted to the voters, the provision was, "if the majority of the electors shall ratify the same." In some cases the requirement was that a majority, or two-thirds of the electors "voting thereon" assent or vote in the affirmative. It seems plain that when the provision requires a certain per cent. of the voters voting thereat, that it means at the election. It seems equally clear that when the requirement as to the necessary vote is "a majority voting thereon," it means those who vote on the particular question, and not on other questions, and that this class of cases is not in point here. In our opinion, the language used in the proviso to section 16 of the act under consideration is equivalent to a provision that the necessary vote is "a majority of the voters voting at the election." In this class of cases the weight of authority, and the better reasoning are to the effect that the majority required is that of the voters voting at the election on any and all questions, and

not merely a majority of those voting for a particular candidate or a particular question. The rule in such case is tersely stated in 15 Cyc. page 390, where it is said: "But according to the weight of authority, when a question is referred to a vote of the people, to be decided by a majority of the legal voters at a general election, the requirement calls for the requisite majority of those who vote on any ticket, nomination, or question at that election, and not merely of those who vote on the particular question presented." Cases where the requirement was that the question should receive a majority of the voters voting "thereon" clearly mean on the particular question. Such cases are not in point here. In *City of Santa Rosa* v. *Bower,* 142 Cal. 299, the court, speaking of the provision that a majority voting thereat should be necessary said. "The case of *People* v. *Town of Berkeley,* 102 Cal. 298, involved a statutory provision substantially the same as the constitutional provision in question in the case at bar. That case construed the provision of section 6 of the same article of the constitution, providing that cities and towns heretofore organized or incorporated may become organized under the general laws 'when a majority of the electors voting at a general election shall so determine,' and it was held to require the favorable vote of a majority of all the electors who voted at the election. There is no substantial distinction between the phrase construed in that case and the one under consideration here. A majority of the electors 'voting at a general election' is substantially the same thing as a majority of the qualified electors 'voting thereat.' The word 'thereat' in section 8 by grammatical construction refers to the previous phrase 'general or special election,' and is exactly the same in meaning as if the sentence had read 'if a majority of the qualified electors voting *at such election* shall ratify the same.' " The text quoted from Cyc. is supported by the following authorities: *High School* v. *Commissioners,* 61 Kan. 796; *People* v. *Town of Berkeley,* 102 Cal. 298; *City of Santa Rosa* v. *Bower,* supra; *State ex rel Greene* v. *Hugo,* 84 Minn. 81; *State* v. *Babcock,*

17 Neb. 188; *State* v. *Sutterfield,* 54 Mo. 391; *State* v. *Mayor of St. Louis,* 73 Mo. 435; *People* v. *Brown,* 11 Ill. 478; *People* v. *Wiant,* 48 Ill. 263; *Chestnutwood* v. *Hood,* 68 Ill. 132; *Enyart* v. *Hanover Township,* 25 Ohio St. 618; *State* v. *Foraker,* 46 Ohio St. 677; *State* v. *Bechel,* 22 Neb. 158; *City of South Bend* v. *Lewis,* 138 Ind. 536; *In re Davis,* 62 Kan. 231, and others unnecessary to cite.

In *State* v. *Bechel,* supra, the proposition of permitting a street railway to build its lines upon the streets of the city of Omaha was submitted to the voters at a general election. The proposition received a majority of those who voted upon it, but not the required majority of the voters voting at the election. The court in its decision says relative to this point: "Section five * * * Compiled Statutes provides * * * 'and if a majority of the votes cast at *such election* shall be in favor of the constructing and operating of such proposed street railroad' the council shall cause the clerk to make the certificate, etc. It is impossible for us, by any system of logical reasoning, to say that the election held in the city of Omaha on the 3d day of May, 1887, was other than one election. There were but the usual number of judges and clerks, but one poll list, and in some precincts but one return. If we say there were two elections, to-wit: the general city election, and the election upon the proposition submitted, to which of these can we say that the poll list, or list of voters actually voting belonged? Most certainly to the general election. If that is true, to what record can we apply for a list of those who voted at the other election, *i. e.,* the one in which votes were cast on the proposition? How could that election be contested upon the ground that illegal votes were cast by those who were not electors? Obviously it could not be successfully done. How can it be said that the fact that another ballot box was prepared, into which ballots were deposited to be counted as cast upon the proposition in question, would produce a different legal result than if the proposition had been written or printed on the tickets for the general elec-

tion, and only 1,650 of the voters had voted upon the question. We confess our inability to divide or separate the election of the day named, and must hold that it constituted but one election. That being the case, 'a majority of the votes cast at such election' were not 'in favor of the constructing and operating such proposed street railroad' as required by the law of the state, and the consent of the majority of the electors was not given."

In the case at bar there was no proposition submitted similar in nature to the proposition submitted in the large majority of the cases. Here the question was as to the selection of political candidates for the several parties, and there is less reason for saying that there was more than one election than in the case of *State* v. *Bechel,* and as much reason for saying that there was only one election, only one set of election officers, only one poll list, and that the majority required in order to elect Mr. Cathcart was a majority of all of "the registered voters voting of the district in which he is a candidate," that is, in the city and county of Honolulu, at said primary, upon all questions, was necessary in order to elect him to the office of city and county attorney.

The difficulty of ascertaining the number of registered voters voting at the primary election aforesaid has been suggested. Section 12 of the act provides that the county clerk shall, at least three days prior to the primary election, present to the judges (inspectors) of election lists of the registered voters. Section 23 provides that "the laws relating to elections shall apply to all primaries" so far as consistent with the provisions of the act. Sections 61 and 98 of the Revised Laws provide that the inspectors of election shall check upon the list of registered voters furnished them, all who vote, and make a list of all who vote, and send such list with other named matters in a sealed packet to the secretary of the Territory addressed to him, and which packet may be opened and inspected in the presence of a justice of the supreme court, after which it shall be resealed in the presence of such justice. It is thus seen that the law provides a way in

which, should a dispute arise as to the number of voters voting at a primary election, that number can be correctly ascertained. The poll list of voters furnished under the provisions of our election laws, is the best evidence of the number of voters who voted. (*High School* v. *Commissioners,* supra.)

A query as to whether the proviso to section 16 of the primary law is germane to the scope of the act as shown by the title and body of the act has been suggested. That question has not been considered, and is not decided. Mr. Cathcart having received a vote less than a majority of the registered voters voting at the primary in the city and county of Honolulu, was not elected under the terms of the proviso. For the reasons herein given the question reserved by the second judge of the first circuit is answered in the affirmative.

*J. McCarn* for petitioner.

*F. W. Milverton* (*Thompson, Wilder, Milverton & Lymer* on the brief) for respondent.