[File No. 6627.]

NEAL H. TRACY, Respondent, v. BARNES COUNTY, a Public Corporation, M. Mortensen, Frank Heimes, C. W. Jaeger, Phillip J. Sauer, George J. Kuhry, as the Board of County Commissioners of Barnes County, a Public Corporation, and J. M. Baillie as County Auditor of Barnes County, a Public Corporation, Appellants.

(289 N. W. 377.)

Opinion filed December 20, 1939.

*William R. Pearce,* State's Attorney, for appellants.

*Sproul & Sad,* for respondents.

Morris, J. The defendants appeal from an order of the district court overruling their demurrer to the plaintiff's complaint. The plaintiff brings this action as a resident, citizen, and taxpayer of Barnes county, North Dakota, in his own behalf and on behalf of all others similarly situated. He seeks to enjoin the county commissioners and certain other officers of Barnes county from issuing, executing, and selling a proposed bond issue of the county in the sum of $65,000. The complaint shows that the county commissioners adopted a resolution setting forth a plan whereby it was proposed to issue refunding bonds in that amount to retire outstanding certificates of indebtedness. The certificates bear interest at the rate of 4 per cent per annum. The proposed bonds would bear interest at the rate of $3\frac{1}{2}$ per cent. The defendants caused the question of whether the bonds should be issued to be submitted to the voters of Barnes county at an election which resulted in the majority of votes in favor of issuing the bonds. The majority was less than $66\frac{2}{3}$ per cent of the votes cast by the qualified voters voting upon the question. The plaintiff further alleges that

he· voted against the issuance of the bonds and that the defendants threatened to and are about to issue refunding bonds as proposed in the resolution of the county commissioners regardless of the fact that the proposal failed to receive an affirmative vote of 66⅔ per cent of the qualified voters of the county who voted upon the question.

The defendants in support of the demurrer to the complaint submitted two arguments. They first contend that no election is required to authorize the county commissioners to issue refunding bonds of the county for the purpose of paying or taking up certificates of indebtedness of the county where the refunding bonds bear a rate of interest less than the certificates and that the election may, therefore, be entirely ·disregarded. They further contend that even if an election is necessary to authorize the issuance of such bonds, only a favorable vote of a· majority of the voters voting at the election is required for the author·ization. In event either of these contentions is correct the defendants are authorized to issue the bonds and the demurrer must be sustained. The solution of these questions requires an examination of the legislative enactments pertaining to the issuing of refunding bonds.

By chapter 195, N. D. Session Laws 1935, the legislature passed "An Act relating to the funding and refunding of existing indebtedness of municipalities. . . ." This was not an amendment of any former enactment but was new legislation. In § 8 of the act it was declared that it "shall be deemed and construed as complete in and of itself. . . . This act is intended to be an additional remedial measure and shall not be deemed to have amended or repealed any existing law." Sections 1 and 2 were amended and re-enacted by chapter 176, N. D. Session Laws 1937. Chapter 178 of the Session Laws of 1939, again amended and re-enacted §§ 1 and 2; and also amended and re-enacted § 5 of the 1935 Act. The statutory law pertaining to the funding and refunding of existing indebtedness of municipalities now consists of §§ 1 and 2 as amended and re-enacted in 1939, §§ 3 and 4 as originally enacted in 1935, § 5 as amended and re-enacted in 1939, §§ 6 to 9, inclusive, as originally enacted in 1935, and a validation section which was added in 1939. References hereafter made refer to the sections as they now exist unless otherwise indicated. We will first consider whether under these statutes an election must be held before funding

or refunding bonds can be issued to take up a municipal indebtedness represented by certificates of indebtedness.

Section 1 indicates that the words "governing body" include a board of county commissioners, and the word "municipality" includes county. "The terms 'floating indebtedness' and 'bonded indebtedness' shall collectively" (which in this instance means both taken together) "be deemed to include orders, certificates of indebtedness, bonds, contracts and warrants and other instruments evidencing a general municipal indebtedness, issued and outstanding prior to January 1, 1939."

Section 2 authorizes a municipality by resolution of its governing body to adopt a plan for funding and refunding its floating indebtedness or bonded indebtedness or both, or any part thereof existing prior to January 1, 1939. It contains certain provisions and restrictions with reference to the plan which "may contemplate the issuance of bonds to refund any or all outstanding bonds, including bonds which are not due or about to become due, may provide that bonds may be exchanged in whole or in part for unmatured bonds with the consent of the holders thereof, and may provide for the execution and sale or exchange and delivery of bonds from time to time as needed to meet maturing obligations." Section 2 also makes provision for the redemption of bonds issued under the act, a matter with which we are not concerned in this case.

Sections 3 and 4 deal with the procedure of carrying out the plan adopted and the issuance of the bonds. They also prescribe a maximum rate of interest, limitations of maturity, and methods of redemption, make the bonds general obligations of the municipality, and direct the levying of taxes to pay the bonds. Section 5 contains the language which must be construed in this case. As originally enacted in 1935, this section provided that the bonds might be sold for cash or exchanged "for outstanding bonds or other indebtedness," and limited the rate of interest to be paid to that borne by the indebtedness to be refunded and further limited the interest rate to 6 per cent per annum in any case. It permitted the use of the proceeds of refunding bonds for the purchase of outstanding bonds, and the payment of outstanding indebtedness, and also permitted the exchange of the refunding bonds for other bonds or indebtedness. The amended § 5 retains all the old provisions but in addition thereto contains the following, "provided that

except as to bonds heretofore contracted to be sold no bonds shall be sold or exchanged hereafter until the municipality has first advertised for bids at a public sale in the manner prescribed by § 17 of chapter 196, Laws of 1927 or acts amendatory thereof; provided, further, that it shall be unlawful for any municipality as herein defined or for the governing body thereof, to issue any bonds for any purpose under this act without first being authorized so to do by a vote of the qualified electors of such municipality, which election shall be held and conducted as provided in chapter 196 of the Session Laws of 1927 or acts amendatory thereof, excepting, however, that this proviso shall not apply to funding bonds which have been contracted to be sold by any such municipality prior to January 1, 1939, nor shall it apply where the funding or refunding bonds bear the same or lower rate of interest than the bonds refunded."

Recurrence to the legislative journals discloses that these provisions were incorporated into the bill by amendment during the course of its passage. The amendment inserted two major departures in procedure, namely, a requirement that the bonds be advertised for bids at public sale in the manner prescribed by § 17 of chapter 196, Laws of 1927, or acts amendatory thereof, and a prohibition against the issuance of bonds without an authorization by a vote of the qualified electors of the municipality. There are two exceptions to the requirement for an election. The first exception deals with bonds that had been directed to be sold prior to January 1, 1939. The second exception is the nub of this controversy. It reads, "nor shall it apply where the funding or refunding bonds bear the same or a lower rate of interest than the *bonds refunded.*" (Italics supplied.) None of the remaining sections contain provisions which help us in construing the language in controversy.

The determination of whether the county commissioners of Barnes county are authorized to issue refunding bonds without an election for the purpose of taking up the county's certificates of indebtedness depends upon the meaning of the term *bonds refunded* in the exception which we have quoted above. If the indebtedness for which it is sought to issue refunding bonds consisted of bonds previously issued by the county there could be no question but that the exception applies and no election would be needed to authorize the commissioners to proceed.

It is argued by the defendants that the term bonds is synonymous with the words certificates of indebtedness, and that the exception should be construed to include certificates refunded as well as bonds refunded. In support of this contention the defendants have cited several cases most of which are from Minnesota, and include, Pike v. Marshall City, 146 Minn. 413, 178 N. W. 1006; Marshall v. Kalman, 153 Minn. 320, 190 N. W. 597; Oakman v. Eveleth, 153 Minn. 117, 189 N. W. 932; Christie v. Duluth, 82 Minn. 202, 84 N. W. 754. In general, it might be said, that the holding in these cases is that certificates of indebtedness which the statutes of Minnesota authorize cities to issue to finance various public improvements, are equivalent to bonds and unless otherwise indicated by statute the provisions of law applicable to the issuance of bonds apply to the issuance of such certificates. The statute under which certificates of indebtedness are issued in North Dakota bear no resemblance to the Minnesota law. Such certificates were first authorized by chapter 326, N. D. Session Laws 1923, which authorized the issuance and sale of certificates of indebtedness by counties and other municipalities against taxes levied but not yet collected. This law was amended by chapter 104, N. D. Session Laws 1925, and again by chapter 247, N. D. Session Laws 1933. Throughout the entire history of the law, the authorization of municipalities to issue certificates of indebtedness has been based on the "power to borrow in anticipation of revenue to be derived from taxes already levied." On the other hand, bonds are evidences of debt usually paid by levies of future taxes. Bonds and certificates of indebtedness may have in common the promise of the municipal corporation to pay the face thereof plus interest at a specified rate, but there is also the marked difference that the certificates are not to be paid from future tax levies. It must also be noted that certificates of indebtedness are not long term obligations. They must be made payable not more than twenty-four months in the future. N. D. Sess. Laws 1933, chap. 247. Bonds, on the other hand, may be and usually are issued for much longer periods. Refunding bonds are issuable serially up to twenty-five years. N. D. Sess. Laws 1935, chap. 195; N. D. Sess. Laws 1939, chap. 178. The legislature may be willing to permit bonds to be issued for refunding a previous bond issue while withholding that privilege from the municipal governing body with respect to outstanding certificates until the refunding

bonds have been approved by the voters of the municipality. Certificates of indebtedness under our statute may be issued by the governing body of the municipality against taxes already levied without a vote of the electors. When refunding bonds are issued to take up certificates of indebtedness, the uncollected taxes which were pledged to the payment of the certificates are released to the extent permitted by § 6 in chapter 195, N. D. Session Laws 1935. It is entirely reasonable that the legislature should require that refunding bonds which take up certificates of indebtedness be issued only after an election has authorized such issue. There is nothing inherent in the word "bonds" and the words "certificates of indebtedness" which makes them in every case either synonymous or different in meaning. To determine their meaning we must look to the context and to the circumstances in which these words are used. The refunding statute does not indicate a synonymous use of these terms. Had the legislature intended to include certificates as well as bonds in the exception which gave to the governing boards of municipalities power to issue refunding bonds without an election, the words making clear such an intention could readily have been inserted in the statute. The omission of such words is significant. It indicates an intention on the part of the legislature to withhold from the governing body the authority which is now claimed. We hold that the legislature did not intend to include certificates of indebtedness when it authorized the governing bodies or municipalities to issue refunding bonds to refund indebtedness represented by outstanding bonds without an election.

Having determined that refunding bonds of a municipality may not be issued to refund certificates of indebtedness until authorized by an election, we turn now to the question of the vote necessary to constitute a valid authorization. The plaintiff claims that a vote of 66 2/3 per cent is necessary, while the defendants assert that a favorable majority is sufficient. This controversy again centers around the construction of language used in § 5 as amended by chapter 178, N. D. Session Laws 1939. It will be noted from the amendment of this section heretofore quoted, that the "election shall be held and conducted as provided in chapter 196 of the Session Laws of 1927 or acts amendatory thereof, . . ." The procedure regarding the calling of an election upon a bond issue is set forth in §§ 8–10 of chapter 196. These sec-

tions contain detailed requirements for calling the election and conducting it. They also prescribe the form of the ballot, but contain nothing with reference to the number of votes required to authorize the issuance of bonds. In § 5 of chapter 196, as amended by chapter 170, N. D. Session Laws 1933, we find the following, "It shall be unlawful for any municipality, as herein defined, or for the governing board thereof, to issue bonds without first being authorized to do so by a vote equal to 66⅔ per cent of all the qualified voters of such municipality voting upon the question of such issue. . . ." It is contended that this language is also part of the procedure for holding the election, and that when the refunding statute requires that the election be "held and conducted as provided in chapter 196," it means that the result of the election shall be determined by the percentage of votes required as in the above quotation. A comparison of the quotation with the provision in the refunding statute as to the requirement of an election shows a marked similarity in the manner of expression. The latter statute says, "it shall be unlawful for any municipality as herein defined or for the governing body thereof, to issue any bonds for any purpose under this act without first being authorized so to do by a vote of the qualified electors of said municipality. . . ." N. D. Sess. Laws 1939, chap. 178. One marked difference, however, is apparent. One statute specifically provides for the percentage of the favorable vote required, and the other omits the percentage and says, "by a vote of the qualified electors of such municipality." The legislature undoubtedly had before it chapter 196, N. D. Session Laws 1927, and amendments thereto, when it amended the refunding statute in such manner as to require an election. It is significant that it followed the phraseology of the former act in requiring an election but omitted the percentage of the vote required for approval. We conclude that the omission of the percentage was intentional, and that the legislature did not intend to include the percentage of votes in adopting the procedure for conducting the election contained in chapter 196.

In the syllabus of State ex rel. McCue v. Blaisdell, 18 N. D. 31, 119 N. W. 360, it is said, "A majority of the votes cast upon a question submitted to a vote, if in the affirmative, carries it, unless the legislative will to the contrary is clearly expressed in the Constitution or the

law." This case is cited with approval in State ex rel. Byerley v. State Canvassers, 44 N. D. 126, 172 N. W. 80; Logan v. Bismarck, 49 N. D. 1178, 194 N. W. 908. It is also quoted with approval in Spangler v. Mitchell, 35 S. D. 335, 152 N. W. 339, Ann. Cas. 1918A 373. See also Bryan v. Lincoln (Bryan v. Stephenson) 50 Neb. 620, 70 N. W. 252, 35 L.R.A. 752; Thomas v. Reid, 142 Okla. 38, 285 P. 92.

In the case before us the legislature did not incorporate into the law requiring an election on refunding bonds any provision, either specifically or by reference, which requires more than a majority of the electors voting at such election to authorize the issuance of such bonds. A majority is, therefore, sufficient. The complaint shows that more than a majority of votes were cast in favor of issuing the proposed bonds. The defendants are, therefore, authorized to proceed. The complaint fails to state a cause of action and the demurrer thereto should be sustained.

Reversed.

NUESSLE, Ch. J., and BURKE, BURR, and CHRISTIANSON, JJ., concur.