REQUESTED BY: Dear Senator Koch:
You have asked us several questions relating to LB 2, Eighty-fifth Legislature, First Special Session, 1978. While your questions relate to existing legislation and normally would fall within the proscription of our office on answering questions concerning the interpretation or constitutionality of existing statutes, you state that you are studying potential methods of amending or repealing LB 2 in the upcoming legislative session. For that reason we will respond to the questions you have posed.
In your first question you ask whether sections 2 and 10 of LB 2 establish a dual standard for imposing and removing a lid? You further inquire as to the constitutionality of such double standards.
Reading the language of the provisions in question admits of no other meaning than two separate standards are being contemplated. Section 2 in part provides, `the budget limitation shall be adopted if approved by a majority of those voting on the question.' Section 10 in part provides:
 "Any limitation placed on budgets pursuant to this act shall remain in effect until a majority of the registered voters authorized to vote for the members of the governing body of such political subdivision vote to alter, amend, or revoke such budget limitation at a primary or special election. . . ."
Under section 2 a simple majority of those voting on the question will be sufficient to adopt the proposed lid. On the other hand, once a petition presenting the question of removal has been successful, it would be necessary to achieve a vote of more than 50% of all voters registered to vote in that particular subdivision.
We have found no case which has discussed clearly the constitutional aspects of the question which you have raised. Most of the cases which have considered such requirements have dealt with an interpretation of specific language. For instance, in Nebraska, in Bryan v. City ofLincoln, 50 Neb. 620 (1897), our Supreme Court held that the following language: `. . . when the same shall have been authorized by a vote of the people . . .' required a majority of the votes cast at that election was necessary rather than a majority voting on the issue. Similar cases can be found in Nebraska and other jurisdictions. The variety of interpretations of the specific language used is directly related to the wording of the statute and, in some instance, the purpose of the election. For that reason a review of those cases would not be helpful. None, however, were based on constitutional grounds. We conclude that the method selected under LB 2 is constitutionally defensible.
In your second question you ask whether or not the provisions of section 11 of LB 2 exempt a subdivision adopting a limit under LB 2 from the provisions of LB 285, Eighty-sixth Legislature, First Session, 1979. It is our conclusion that the language of section 11 requires no interpretation. It, in part, provides:
 "Any statutory limitation on the budget, . . . shall not apply to any . . . subdivision which has adopted a . . . limitation . . . pursuant to this act. . ."
The specific language of this section would indicate that LB 2 will govern over other limits established by law.
In your final question you ask who pays the cost of a special election required pursuant to the provisions of LB 2? Section 32-226 generally sets forth the duties of the election commissioner in each of the various counties of the state having an election commissioner. In those counties in which there is no election commissioners the duties are to be performed by the county clerks. LB 2 does not specify any separate or different method for funding elections than that generally specified by law. For that reason we believe that the general provisions relating to elections will apply. The aforementioned section provides in part:
 ". . . The expense of holding and conducting, separately, any city, municipality, metropolitan utilities district, school, district, or other political subdivision election shall be charged to and paid by the city, municipality, metropolitan utilities district, school district, or other political subdivision holding the election. . . ."
Further, section 32-417, R.R.S. 1943, in part provides:
 ". . . The expense of printing and delivering the ballots and cards of instruction to be used in any city, municipality, metropolitan utilities district, or other political subdivision elections shall be a charge upon the city, municipality, metropolitan utilities district, school district, or other political subdivision in which the election shall be held."
We believe that the provisions of the cited sections indicate that the particular subdivision generally will be required to bear the cost of any special election called for the purpose of deciding a question relating to that political subdivision.