THE BOARD OF TRUSTEES FOR THE SUMNER COUNTY, KANSAS, HIGH SCHOOL v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SUMNER *et al.*

**No. 11,704.** (60 Pac. 1057.)

1. COUNTY HIGH SCHOOL—*Sumner County — Statute Construed.* An act of the legislature provided that the question of the continuance of the Sumner county high school should be submitted to the electors of that county at the general election in 1899, and that if a majority of the voters voting at said election should vote "No" the school should be disestablished. *Held,* that the meaning of the statute is plain, and that, a majority of all the voters voting at said election having failed to vote in the negative, the school was not discontinued.

2. ——— *Poll-books as Evidence.* The names of the voters appearing on the poll-books furnish the best evidence of the total number of votes cast.

3. ——— *Canvass of Votes—Improper Action of Commissioners—Mandamus.* The board of county commissioners met as a board of canvassers on November 10 and 11, after the general election, and made an abstract of the votes cast, which showed that the total number of voters voting at said election was 5324, of which 2648 voted "No" and 2100 voted "Yes" on the high-school proposition; but said board of commissioners made no declaration of the result. Later, and in December following, a meeting of the board was called, and arguments heard regarding the construction of the statute authorizing the vote. A majority of the board then decided "that according to the votes of the November election the right to maintain the high school was lost." *Held,* that the action taken at the December meeting was a nullity; that a complete canvass of the votes was made on November 10 and 11, and the work of the canvassing board completed, with the exception of declaring the result, which it was the duty of the board to do, and the performance of such duty may be enforced by mandamus.

Original proceeding in mandamus. Opinion filed May 5, 1900. Writ awarded.

*J. M. Ready,* county attorney, *Herrick & Rogers,* and *C. D. Burnette,* for plaintiffs.

*C. E. Elliott,* and *J. A. Ray,* for defendants.

The opinion of the court was delivered by

SMITH, J. : This is an action originally brought in this court by the board of trustees of the Sumner county high school against the board of county commissioners of the county of Sumner and the county clerk, for the purpose of requiring the latter to meet as a board of canvassers and declare the proper result of a vote had at the general election in 1899 upon the proposition then submitted : "Shall the Sumner county high school be maintained?" Chapter 186 of the Laws of 1897 authorized the board of county commissioners of Sumner county to lease from the board of education of the city of Wellington a building or rooms for a county high school, and provided that, upon the completion of the lease, said building and rooms should become a county high school, and that a board of trustees should be appointed thereafter, whose duties should be in all respect the same as those of high-school boards provided for in chapter 147 of the Laws of 1886 (Gen. Stat. 1897, ch. 64, §§ 1–19 ; Gen. Stat. 1899, §§ 6229–6246).

On the 23 day of July, 1897, the county board leased from the board of education of Wellington a building and rooms for high-school purposes, and appointed a board of trustees as provided for in said act. The trustees organized and established a high school in said building, and it has been maintained therein since that time. Chapter 32 of the Laws of 1898 provided for the submission to the voters of Sumner county of the question whether the high school should be disestablished. The act referred to reads :

"SECTION 1. That the board of county commissioners of Sumner county, Kansas, is hereby authorized, empowered and directed to submit to the voters

of Sumner county, Kansas, at the general election of 1899, the proposition as to whether or not the Sumner county high school shall be maintained as is provided by chapter 186 of the Session Laws of 1897.

"Sec. 2.  That those desiring to vote in the affirmative shall vote 'Yes' and those desiring to vote in the negative shall vote 'No.'

"Sec. 3.  If a majority of the voters voting at such election shall vote 'No,' the right, power and authority of the board of trustees of the Sumner county high school or the board of county commissioners of said county to levy taxes for the support and maintenance thereof shall cease to exist, and the said school shall be discontinued on and after the 1st day of July, A. D. 1900, and the properties and effects of said school shall be sold, and the funds derived therefrom be turned into the general revenue fund of the county."

On September 6, 1899, the board of county commissioners made an order that the proposition as to whether or not the high school should be maintained be submitted to a vote of the people of the county at the next general election, as provided in the act above set out.  The proposition was printed on the ballots, as follows: "Shall the Sumner county high school be maintained?"  On the 10th day of November, 1899, the county commissioners met as a board of canvassers and proceeded to canvass the returns of said election, as required by law, and completed the canvass on November 11, 1899.  An abstract of the votes cast at said election was made out and signed by the members of the board of canvassers, which abstract showed that the total number of voters voting at the election was 5324; that the total number of voters voting against said proposition was 2648, and that the total number of voters voting in favor of said proposition was 2100.  Attached to the abstract of the votes cast was a certificate made by the members

of the board, stating that the same was true and correct.   The board of canvassers then adjourned without making any formal declaration of the result of the vote on the high-school proposition, except as shown by said abstract.

On the 28th day of November the commissioners, in response to a petition signed by numerous taxpayers, met in special session for the purpose of considering whether the high-school proposition had been carried or not.   On December 2, at an adjourned meeting of the board, a motion was made and carried "that, according to the votes of the November election, the right to maintain the high school is lost."

It will be noticed that section 3 of the act of 1898, providing for a submission to the voters of the county, provides that "If a majority of the voters voting at said election shall vote 'No,' the right, power and authority of the board of trustees of the Sumner county high school or the board of county commissioners of said county to levy taxes for the support and maintenance thereof shall cease to exist," etc. There is not much room for disagreement as to the meaning of this section of the law.   It was within the power of the legislature to submit the proposition in any manner it saw fit.   It might have made the continued existence of the high school depend on an affirmative vote of one-third of the voters, or might have continued the high school indefinitely without any vote at all, or have abolished it without consulting the voters of the county.   (*The State v. Freeman*, ante, p. 90, 58 Pac. 959.)   We know of no limitation upon the authority of the legislature which would prevent it from making the disestablishment of the high school depend on the will of a majority of the voters voting at the election who should vote "No."

We can come to no other conclusion than that the statute means what it says. See *Prohibitory-amendment Cases*, 24 Kan. 700, 722. Mr. Justice Brewer, speaking for the court in those cases, said:

"A distinction is also apparent between the number requisite for the adoption of an amendment, and that for calling a constitutional convention. In the latter, it must be a majority of all the electors voting at that election; while in the former, it is a majority of those voting on the amendment."

The board of commissioners in fact made but one canvass of the votes, and that canvass was made on the 10th and 11th days of November, 1899. Whatever action was taken thereafter by the board was based on the canvass made on November 10 and 11. All that was necessary to complete the canvass made on those dates was a declaration of the result. When the board sat in December, it was not a canvassing board. Its principal occupation was to hear a discussion of law questions involving the construction of section 3 of the statute under which the proposition was submitted. The board was attempting at that time to ascertain the law covering the case. This distinctly appears from the proceedings had before it.

It is contended that the canvassing board wrongfully assumed that all the persons whose names appear on the poll-books voted at the election. We know of no better method of arriving at the number of votes cast at an election than by counting the names as they appear on the poll-books. It is not to be presumed that any person whose name appears thereon did not vote, but that all there named appeared personally and cast their ballots. We must assume that all persons whose names appear on the poll-books voted at the election. (*The State, ex rel., v.*

*Sillon*, 24 Kan. 13.) We cannot see that the fifty-one ballots which were returned to the county clerk, marked defective and mutilated and not voted, can in any way affect the case. Their condition is not explained, and we take it they were not placed in the ballot-box and did not express the will of any voter named on the poll-book, It clearly appears that a majority of the voters voting at said election did not vote "No." This was the test on which the legislature determined that the continuance of the high school should depend; and we think it was the duty of the board of canvassers, at its meeting on November 10 and 11, to declare that the proposition to discontinue the school was lost. The declaration made by the board at its meeting in December was wrong, according to its own record, of which the abstract of the vote cast at the election was a part.

Section 106 of chapter 52, General Statutes of 1897 (Gen. Stat. 1899, § 2525), provides that the commissioners shall meet as a board of canvassers at the office of the county clerk on Friday next following the election,

"and shall proceed to open the several returns which shall have been made to that office; and said commissioners shall determine the persons who have received the greatest number of votes in the county for the several county, district, and state officers. . . . And such determination shall be reduced to writing, and signed by said commissioners, and attested by the clerk, and shall be annexed to the abstract of votes given for such officers respectively provided for in section 31 of this act."

It is the duty of the canvassing board to register its "determination," and sign the same, which is to be attested by the clerk and annexed to the abstract of votes. An abstract of votes was made in this case by

51—61 KAN.

the board, but its determination, which we understand to be nothing more than a declaration of the result, was omitted. This declaration would be of little importance in a case where certificates of election are required to be issued by the board. No fraud is claimed to have been committed in this election. The hesitation upon the part of the commissioners resulted from a doubt as to the proper construction of the statute which authorized an election to be had upon the question. In *Shull v. Comm'rs of Gray Co.*, 54 Kan. 101, 106, 37 Pac. 995, it was said: "The duty of a canvassing board is almost wholly ministerial. They are to ascertain and declare the result of the voting as shown by the returns."

When writs of mandamus issue to ministerial canvassers and command acts which involve no exercise of discretion, the writ may control such officers, and not only command the performance of the act in question but the manner of such performance and the decision which they are to render. This rule has been applied to a judicial officer invested with discretion as to acts which it was sought to compel by mandamus. If such discretion be abused, the writ may issue controlling the performance of the duty. (13 Encyc. Pl. & Pr. 527, 528, and cases cited.) We conclude, therefore, that it was the duty of the board of county commissioners, sitting as a canvassing board on November 10 and 11, to declare the result as shown by the record then made; and a peremptory writ of mandamus will be awarded to compel the performance of such duty now, as of that time.