ABE T. OXFORD v. L. N. FRANK, COUNTY JUDGE, ET AL.

Decided November 8, 1902.

**1.—Local Option—Election District—Commissioners Court—Constitutional Law.**

Although the provision in the Constitution of 1876 (article 16, section 20) directing the Legislature to enact a law whereby the voters of any county, justice precinct, town or city might determine in regard to the sale of intoxicating liquors therein, was amended in 1891 to include the voters of "such subdivisions of a county as may be designated by the commissioners court," and the statute was subsequently amended in accordance therewith (Revised Statutes, articles 3384, 3393, 3395), yet as such constitutional grant of power to the people was not self-enacting, but dependent on legislative action, the subsequent amendment, in 1897, of article 3384, restricting the power of the commissioners court to the selection of one or more of the political subdivisions of the county as local option election districts, was a valid exercise of legislative power.

**2.—Same—Repeal by Implication.**

The Act of 1897 amending article 3384, Revised Statutes, in reference to local option election districts, repealed by implication articles 3393 and 3395, based upon a feature of the law removed by such amendatory act.

3.—Same—Election Void—Unauthorized Election District.

Where a local option election was held for a territory or district designated by the commissioners court, which had not theretofore been designated for any purpose, and which disregarded all political subdivisions, leaving part of a voting precinct within and part of it outside such election district, it was void.

4.—Same—Jurisdiction of District Court.

The district court has jurisdiction of a local option election contest and the power to declare the election void for want of authority in the commissioners court to order it for the territory in which it was held. Const., art. 5, sec. 8, as amended in 1891; Rev. Stats., art. 3397.

Appeal from the District Court of Erath County. Tried below before Hon. G. H. Goodson, Special Judge.

*Martin & George,* for appellant.

*Daniel & Keith,* for appellees.

CONNER, Chief Justice.—This suit was brought by Abe T. Oxford against L. N. Frank, as county judge, and Boyd, Mayfield, Shelnutt, and Miller as county commissioners, of Erath County, Texas, and Eugene Moore, publisher of the Stephenville Empire, and was a suit to test the validity of a local option election. The plaintiff alleged that he was a citizen, qualified voter, and taxpayer of the subdivision of Erath County in which the local option election sought to be contested had been held, setting out fully the grounds of contest. The suit was brought as a contested election suit under article 3397 of the Revised Statutes, and also as a bill in equity in which it was sought to restrain the defendants from publishing a notice of the result of said election. The cause was tried before the judge without a jury, and the court held that all the allegations in the petition were true, that the election was void, but that he had no jurisdiction under the statutes to hear and determine the cause in so far as it was a contested election case, and that as a bill in equity the petition on its face and the proof as offered showed no cause of action, and he accordingly dismissed the entire cause.

We find it necessary to determine but two questions on this appeal from the judgment of the District Court above stated. These are: (1) Was the election contested void on the ground alleged? and (2) if so, has the District Court the power to so declare?

The election was held on March 15, 1902, and was in all respects regular, save that, as alleged, the election as prayed for, ordered, and held was neither for the entire county of Erath nor for any commissioner's or justice's precinct or school district thereof; nor for any two or more of such subdivisions, but on the contrary was for a territory within said county designated by the commissioners court for the purpose which had not theretofore been designated for any purpose, and which disregarded all political subdivisions, leaving part of voting precinct

No. 16 within and part of said precinct without the territory so designated.

Summarizing, and omitting all reference to provisions not germane to the question before us, it may not be entirely unprofitable to premise that the Constitution of 1869 provided that the Legislature might "prohibit the sale of all intoxicating or spirituous liquors in the immediate vicinity of any college or seminary of learning." Art. 12, sec. 48, Const. 1869.

By original section 20, article 16, of the Constitution of 1876, the Legislature was directed to enact a law "whereby the qualified voters of any county, justice precinct, town or city" might determine whether the sale of intoxicating liquors should be prohibited within the prescribed limits. Various laws in accord with this latter constitutional provision were enacted until in 1891, when said section of the Constitution of 1876 was amended so as to read as follows: "The Legislature shall, at its first session, enact a law whereby the qualified voters of any county, justice's precinct, town, city (or such subdivision of a county as may be designated by the commissioners court of said county), may by a majority vote determine from time to time whether the sale of intoxicating liquors shall be prohibited within the prescribed limits." Thereupon the Revised Civil Statutes of 1879, by act approved March 29, 1893, was so amended as that article 3227 declared that the commissioners court might order an election for said purpose to be held by the qualified voters of the county or of any justice's precinct, "or such subdivision of a county as may be designated by the commissioners court of said county. * * *" By the same act, articles 3236 and 3238 were amended so as to provide that no election under the law should be held within the same prescribed limits in less than two years after an election had been held therein, but that "at the expiration of that time" the commissioners court, when it deemed it expedient, might order another election to be held for the county or any justice's precinct, or such subdivision of a county as should be designated by the commissioners court of such county for the same purpose; and that the failure to carry prohibition in a county should not prohibit an election for the same from being immediately thereafter held "in a justice precinct, or subdivision of such county as may be designated by the commissioners court."

The amended articles above referred to, together with others upon the same subject, were embodied in the Revised Statutes of 1895; said article 3227 therein appearing as article 3384, and said articles 3236 and 3238 therein appearing as articles 3393 and 3395 respectively. In this condition of the law the Legislature in 1897 amended article 3384 of the Revised Statutes of 1895 so as to read as follows:

"Article 3384. The commissioners court of each county in the State, whenever they deem it expedient, may order an election, to be held by the qualified voters of said county, or of any commissioner's or justice's precinct, or school district, or any two or more of any such political

`subdivisions of a county as may be designated by the commissioners court of said county, to determine whether or not the sale of intoxicating liquors shall be prohibited in such county, or commissioner's or justice's precinct, or school district, or any two or more of any such political subdivisions of such county, or in any town or city; provided, it shall be the duty of said commissioners court to order the election as aforesaid whenever petitioned so to do by as many as two hundred and fifty voters in any county, or fifty voters in any other political subdivision of the county or school district, as shall be designated by said court, or in any city or town, as the case may be."

The power of the people in a given section to, in effect, enact a law for such territory, is in its nature essentially legislative, and depends upon constitutional and legislative grant. The constitutional provision operative in the instance before us does not in express terms contain such grant. It is not in this particular self-enacting, but it is thereby made the duty of the regularly constituted legislative body to enact a local option law for the specified purpose. Odell v. Wharton, 87 Texas, 173. This was done, and, as we have seen by the law first enacted thereafter, the commissioners court was given power to order an election for the purpose of determining whether or not intoxicating liquors should be sold, not only for the entire county or any town, city, or justice's precinct therein, but also for any subdivision of the county that might be designated by said court: thus leaving it entirely discretionary with the commissioners court to fix the boundaries of the territory within which the election should take place. This discretionary power, however, was recalled by the amendment of 1897, which was operative at the time of the several proceedings herein, and the commissioners court was thereby granted power only to order such an election for the entire county or for any one or more of the commissioner's or justice's precincts, or school districts, as might be designated by said court. The discretion vested in the commissioners court by this amendment was limited to the designation of the particular one or more of the political subdivisions of the county theretofore in existence, and did not extend so as to authorize said court to arbitrarily select and fix a territory ignoring and segregating such political subdivisions.

It is insisted, however, that by the amended Constitution of 1891 it was manifestly intended that the discretionary power mentioned to fix boundaries should be conferred, and that such power pursuant thereto having been in fact lodged in the commissioners court by the amendatory Act of 1893, that the amendment of 1897 should not be construed as inconsistent therewith, but merely as a supplementory provision. But we have been unable to agree with this construction. Indeed, the writer by no means feels clear that section 20, article 16, of the Constitution of 1876, as amended in 1891, is necessarily to be construed as requiring an enactment giving the commissioners court an arbitrary, untrammelled power in the particular we are considering. It would, perhaps, be equally reasonable to construe the parenthetical clause constituting the

principal feature of the amendment of 1891 as having been intended to supply the power to designate school districts or colleges which was mentioned in the Constitution of 1869, but in which the original article of the Constitution of 1876 and of the laws passed pursuant thereto were deficient; and that the declared power given by the amendment of 1893 was the result of a misconstruction of the amended clause of the Constitution by the framer of the bill which the amendment of 1897 was intended to correct. But, however this may be, we feel clear that the Act of 1893 is inconsistent in the particular under consideration with that of 1897, and that the latter act by virtue of its terms and character repealed the former.

It is further insisted that, inasmuch as there had been former local option elections ordered and held within and for Erath County, which fact is uncontroverted in the record, and that the one involved was a "subsequent" election, that the power of the court to designate boundaries as was done is to be found in Revised Statutes of 1895, articles 3393 and 3395, from which we have quoted above, and which were not named in the amendatory act of 1897; the contention being that the failure to name these articles in the amendment manifests a legislative intent in cases of subsequent elections to confer unlimited discretion and power on commissioners courts in the matter of fixing boundaries within which the election should be held, even though such be not the case where the election is an original or first one. It must be confessed that there seems to be some inconsistency and want of clearness in the statutes on the subject. This may be attributed, however, to the fact that the body of the law on the subject is made up of various provisions of several Legislatures under the Constitution of 1876, and of its amended section; and that said articles in the Act of 1893 were made to harmonize with article 3227, evidently intended as the main source of power, and that inadvertently no corresponding change was therein expressly made in 1897 when said article 3227 (3384) was amended. But, without discussing the various views which perhaps tend to the conclusion, we prefer to hold that the power of commissioners courts to order local option elections is in all cases limited in the particular under consideration by the amended article 3384, and that in so far as articles 3393 and 3395 may be construed as enlarging the scope of article 3384, they were repealed by the amendment of 1897.

A quotation from the opinion of the Court of Appeals of Maryland in the case of Weiskittle v. State, 58 Maryland, 157, seems appropriate here: "We may concede that a repeal of a statute by implication is not favored by law. But where a new statute is passed, which is declared in terms to be a substitute for the old, and which embraces the whole subject matter, those parts of the old statute which are left out in the new are repealed and annulled. We must presume that such a statute was made for some purpose, and that purpose must necessarily be either the addition of some provision not in the old, or the repeal of something that is in it, or for both purposes. When, therefore, an im-

portant provision in the old statute is omitted from the new (which was intended as a *substitute* for the old), we must presume that the Legislature intended to repeal it, or that they were guilty of gross carelessness or ignorance, which is altogether inadmissible." See also Stewart v. Kahn, 11 Wallace, 502, in which the Supreme Court of the United States say: "It is a rule of law that where a revising statute, or one enacted for another, omits provisions contained in the original act, the parts omitted can not be kept in force by construction, but are annulled."

We conclude, as did the able trial judge, that the election involved in this case was void because of a want of power in the commissioners court to order it for the territory designated.

This brings us the second and perhaps more difficult question before us, viz: Did the District Court have power to so declare? We have concluded that it did, and that the court was in error in refusing to so do, and in the resultant dismissal of the suit. Such power has been expressly affirmed by the Court of Civil Appeals for the Fifth District in the case of Kidd v. Truett, 28 Texas Civil Appeals, 618, 68 Southwestern Reporter, 310, published since the trial of this case below, and such in trend was the conclusion of this court in Rayner v. Forbes, 52 Southwestern Reporter, 568; and in Scarborough v. Eubank, 52 Southwestern Reporter, 569. It is true that in the latter case, on certified questions (93 Texas, 106), our Supreme Court held that the ruling of a county judge as to the qualification of the signers to a petition for the removal of a county site was conclusive, yet the "broader question," the one here involved, was expressly pretermitted; so that we feel free to follow the case of Kidd v. Truett, supra, and to adhere to the general view presented by this court in the cases cited. The case now before us is not what effect shall be given to the conclusion of the officer or officers passing upon the number and qualification of the signers to a petition for a local option election, which was determined by our Supreme Court in Scarborough v. Eubank, but what is the scope of the authority given to our courts in the determination of election contests?

Appellees' contention here is, as in Scarborough v. Eubank, that the court's authority is limited to an investigation of the several specified cases of "invalidity" pointed out in the statutes providing for contested elections, and the ground of invalidity herein shown not being one of them, that the district court was without power to determine the fact and declare the result. No very satisfactory purpose, perhaps, is to be served in reviewing the authorities prior to the amendment of the Constitution of 1891, yet it may be worthy of note that the decisions were addressed wholly to the question of whether or not under the Constitution prior to its amendment the district court was authorized to determine a contest of election at all. The scope of its authority after entering upon such an investigation was not treated, although then, as now, existed substantially the same provisions upon which is based appellees' contention herein. See Gibson v. Templeton, 62 Texas, 355, and cases

therein cited, and compare articles 1740, 1741, Revised Statutes 1879, with Sayles' Civil Statutes of 1897, articles 1804e and 1804f. The "evil to be remedied," then, was a want of jurisdiction or power entire. The power of the people in their sovereign capacity to fix the subjects of judicial cognizance is not to be questioned, and the remedy applied seems to have been coextensive with the adjudged evil, for we find that the amended Constitution of 1891, in the most general terms, and with distinct specification of the whole subject, declared that "the district court shall have original jurisdiction   *   *   *   of contested elections. *   *   *" The legislative grant following this constitutional amendment is to the same effect and equally as comprehensive. Rev. Stats. 1895, art. 1098, chap. 7. And it was specially provided that "at any time within thirty days after the result of an [local option] election has been declared, any qualified voter of the county, justice's precinct, or subdivision of such county   *   *   *   may contest said election in any court of competent jurisdiction in such manner as has been or may hereafter be prescribed." Rev. Stats., art. 3397. In prescribing the procedure it is also provided that any person intending to contest an election shall deliver to the contestee "a written statement of the ground on which such contestant relies to sustain such contest." Rev. Stats., art. 1798. And article 1803 provides that "in trials of all contests of election [and the title evidently provides for contests other than in cases for office; see Revised Statutes, articles 1804t and 1810] the evidence shall be confined to the issues made by the statement and reply thereto, which statement and reply may be amended as in civil cases," etc.

These provisions, constitutional and legislative, to our minds and in view of the evil sought to be corrected, evince a purpose to leave (save where limited by some special matter) the entire field of subjects for which an election may be declared "invalid," open to the courts charged with the duty of determining the contest. That part of article 3397, supra, not included in our quotation therefrom, and also articles 1804e and 1804f, provide what the court shall do in the events therein designated. But these constitute special instances, and in our opinion relate to the subject of procedure, or constitute, at most, a limitation of the court's power in the instances specified. We do not think they should be construed as inhibiting the court's action in the particular under consideration in instances and events not specified. We see no good reason why the people of this State in their constitutional and legislative capacities should make long continued and painstaking effort to provide for the settlement of controversies and contests of the most disturbing character without fully meeting the evil. Mr. Webster gives the following definitions of the term "contest": "To make a subject of dispute,   *   *   *   to call in question; to dispute;   *   *   * (b) to dispute the declared result of an election." Election contests and disputes are often most heated and productive of public intranquillity and confusion, and are none the less so because the ground of

dispute or contest may go to a want of authority to order or hold it, rather than to its invalidity because of some irregularity or illegal action committed in conducting it. The election in the case before us was ordered and conducted by regularly constituted officers asserting power to do so; the election in form was regular, and we think it was certainly within the purview of the court's power to determine the controversy.

Whether or not in any case of the kind the remedy by injunction be available, we need not decide, inasmuch as it is conceded in behalf of appellant that the facts herein constituting the alleged basis for such relief no longer exist. See Norton v. Alexander, 28 Texas Civ. App., 466; 4 Texas Ct. Rep., 723.

Upon the court's findings of fact, which we adopt, the judgment is reversed, and it is here adjudged that the election in question was void, and that appellant recover his costs here and in the court below.

*Reversed and rendered.*