**LADD et al. v. YETT, Mayor, et al.**
(No. 6941.)

(Court of Civil Appeals of Texas. Austin.
May 13, 1925.)

**1. Elections ⬤⟿269—Election contest is not civil suit, and trial judge has wide discretion in conducting proceedings.**

Election contest is not civil suit, and trial judge has wide discretion in conducting proceedings.

**2. Elections ⬤⟿279—Trial judge may permit intervention in election contest by member of city council who is at least proper contestee.**

Trial judge, in exercise of his discretion, might permit intervention in election contest under Rev. St. arts. 3046–3078, by member of city council, who, under article 3078, was at least proper contestee to make such defense as statutes authorize, and who was originally made party to proceedings, but was dismissed from suit on his plea to court's jurisdiction.

**3. Courts ⬤⟿247(5)—Questions not certified to Supreme Court, in absence of special reason therefor.**

Questions will not be certified to Supreme Court, unless some special reason therefor exists other than importance of questions involved.

**4. Courts ⬤⟿247(7)—Decision relating to election contests held not in conflict with decisions of other courts.**

Decision that Rev. St. arts. 3046–3078, does not authorize election contests on ground that law under which election was held is void, but only for some statutory reason, showing that it was not properly or fairly conducted, *held* not in conflict with decisions of other Courts

of Civil Appeals and of Supreme Court relating to contests of local option elections under Vernon's Sayles' Ann. Civ. St. 1914, art. 5728, or to elections contesting removal of county seats.

**5. Elections ⬤⟿298(1) — What matters not considered in contest stated.**

Whether propositions as to amendment of charter, submitted without initiation by charter commission, were void, whether city council was authorized on its own initiative to submit proposition to repeal vital parts of charter, whether single propositions illegally submitted more than one subject, whether propositions were void because not identifying statute to be repealed or amended, or whether certain propositions violated Const. art. 3, § 36, in undertaking to revive and amend portions of statute without re-enacting and publishing it at length, could not be considered in election contest, under Rev. St. arts. 3046–3078.

**6. Elections ⬤⟿298(1)—Construction of statute requiring amendment of city charter to be adopted by majority of votes cast at election may properly be determined in contest.**

Question whether Vernon's Sayles' Ann. Civ. St. 1914, art. 1096b, requiring amendment to city charters to be approved by "majority of the qualified voters, voting at said election," forbids amendment on vote of less than majority of votes cast at such election, though amendment receives more than majority of votes cast on such amendment, may properly be determined in election contest under Rev. St. arts. 3046–3078.

**7. Municipal corporations ⬤⟿46—Statute requiring amendments to city charter to be approved by majority of voters "voting at said election" construed.**

Vernon's Sayles' Ann. Civ. St. 1914, art. 1096b, requiring amendments to city charters to be approved by majority of qualified voters "voting at said election," in view of its other provisions, requires that each proposed amendment be considered separately, and result as to each determined from votes cast for or against it, irrespective of total number of votes that may be cast at election.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Voting.]

**8. Statutes ⬤⟿181(2)—Construction leading to absurd results and invalidity not applied, if possible to be avoided.**

Construction of statute leading to absurd results and invalidity will not be applied, if its language is susceptible of another interpretation which will preserve all of the law intact.

**9. Elections ⬤⟿298(3)—Policy of law to uphold declared results of elections properly and fairly conducted.**

It is policy of law to uphold declared results of elections properly and fairly conducted.

Appeal from District Court, Travis County; George Calhoun, Judge.

Election contest by N. A. Ladd and others against W. D. Yett, Mayor, and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

---

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Cofer & Cofer, of Austin, for appellants.

Paul D. Page, Jr., and J. Harris Gardner, D. K. Woodward, Jr., and White, Wilcox, Graves & Taylor, all of Austin, for appellee Nolen.

BLAIR, J. This appeal is from a contested election proceeding under title 49, chapter 8, of the Revised Statutes, and arose in the following manner: On August 8, 1924, there was held in the city of Austin, Tex., a special election to determine whether or not 22 amendments to the existing charter of said city should be adopted; some of which repealed parts of the existing charter, while others amended it. The city council declared all the amendments carried. Appellants, N. A. Ladd and L. Rast, resident citizens of the city of Austin, served the mayor and each of the commission composing the city council with their notice and statement of grounds of contest, and later filed the statement of grounds of contest so served in the district court as the basis for this proceeding. The statement of the grounds of the contest as amended attacks the legality of the 22 amendments voted upon, the legality of the election, and the correctness of the results of the election as declared. We will not attempt to detail the facts pleaded, but adopt appellants' statement of the issues raised thereby:

"(1) That the city council was without authority to submit such amendments, because they had not been framed by a charter commission as expressly provided by statute. Vernon's Sayles' Statutes, arts. 1096a, 1096b.

"(2) That the city council is without power under the statute except through a charter commission to submit propositions of repeal. Its power to submit propositions is limited to submitting 'amendments,' and this does not include repealing propositions.

"(3) That the city council was without power to submit, as was done, propositions containing more than one subject, so combined that the voter had no privilege of voting for some subjects and against other subjects, contrary to the statute declaring each proposition shall contain but one subject.

"(4) That the proposed amendments are invalid and illegal because they do not make reference to the public act of the Legislature (being the Act of 1909 of the Thirty-first Legislature), which it is the purpose of these propositions to amend.

"(5) That propositions 8, 9, 11, 12, 13, and 17 are invalid and illegal, because they propose to amend parts of the public acts of the Legislature of Texas by striking out and changing language of certain sections without re-enacting such sections contrary to article 3, § 36, of the Constitution.

"(6) That there were a total of 4,956 qualified voters voting at said election of which 17 were not counted, and each and all of said propositions failed to be approved by a majority of such qualified voters, each receiving less than 2,479 votes and less than 2,470 votes.

"(7) That the lawful returns showed that each proposition had failed to receive as many affirmative votes as negative votes, and the result was illegally and wrongfully declared. The contention of appellants here is that under the evidence they were entitled to have the result of the election declared from the lawful returns, and that these showed that all of the propositions had failed, at least that proposition 2 had failed, and that its failure rendered ineffective all the amendments."

The reply of the contestees, W. D. Yett, Mayor, and C. N. Avery, Harry Nolen, Harry Haynes, and George Searight, who compose the city council of the city of Austin, was a general demurrer, which the court overruled, and a general denial. Harry Nolen, one of the contestees, filed a plea to the jurisdiction of the court; whereupon contestants moved to dismiss their suit against him as a contestee, which motion was sustained by the court. Nolen was later granted leave to file his plea of intervention, making himself a party contestee, which plea consisted of a general demurrer and several special exceptions, all of which were overruled, and a general denial.

The trial judge, before whom the cause was tried without a jury, filed, among others, the following findings of fact and conclusions of law:

"(1) I find as a fact that at the special election held in the city of Austin on the 9th day of August, A. D. 1924, wherein there was submitted to a vote of the people by the city council of the city of Austin 22 proposed amendments to the city charter of the city of Austin, there were cast for and against each of said amendments or propositions the number of votes set opposite the propositions respectively, as shown in the following table: (Tabulation omitted here, but each amendment is shown to have received more affirmative than negative votes).

"(2) I find that said election was regularly held according to law.

"(3) I find therefore that each of the 22 propositions or amendments submitted to a vote of the people at said election received in its favor a majority of the votes cast at said election, in that each proposition received more votes in its favor than were cast against it."

"(6) I conclude, as a matter of law, that the election so held was a valid election, and that each of the proposed amendments to the city charter of the city of Austin was duly adopted, and that the said city charter of the city of Austin, as it existed prior thereto, has been duly and legally amended as provided in each of said 22 amendments."

[1, 2] With the submission of the case we also took under submission a motion by contestants to strike out the brief of intervener, Harry Nolen, filed herein, urging also in this connection their propositions Nos. 1 and 2 that the court erred in granting him leave to intervene over their objection. The motion is without merit, and is overruled. Appellants showed no injury whatever occasioned by the

intervention of Nolen. In fact, they practically admit that no injury occurred by reason of his intervention, since every question decided could have been, and was, disposed of upon pleadings of contestants and contestees. They argue, however, that, if the trial court in this instance can permit Nolen to intervene, there is no marked stopping place for such interventions, and many others might be permitted to intervene. This argument is not tenable when applied to the particular intervener. He was a member of the city council that declared the results of the election being contested. Article 3078, Revised Statutes, provides that defendant to an election contest, among others, shall be "the officer who declared the official result of said election, or one of them." So under this statute Nolen was at least a proper party to the suit filed, which appellants recognized, for they served him with notice and a statement of the grounds of contest, and made him a party to the proceedings filed in the district court. Being a proper party to the suit, he filed, as he had a right to do, a plea to the jurisdiction of the court; whereupon contestants moved to dismiss him from the suit, which motion was granted, and he was accordingly dismissed. It thus appears that the only reason for dismissing Nolen from the suit was the fact that he contested appellants' cause of action, which, we submit, is not a valid reason. Having been brought into the suit as a proper party thereto by contestants, he would be entitled to defend his action as an official who declared the result of the election being contested. Of course, no error is predicated here because of his dismissal, for the trial court permitted him to thereafter intervene. There is nothing in the election contest statutes which prohibits one of the officials who declared the results of a contested election from defending his acts in so doing independently of any defense or defenses that may be urged by other officials who acted with him in declaring the election results. Neither do the statutes prohibit one who is a proper party to an election contest from intervening where he has not been made a party thereto, and urging any defense to the validity or invalidity of the election results as declared. It is also well settled that in this state an election contest is not a civil suit, and that the trial judge has a wide discretion in the conduct of the proceedings, and we think that in the exercise of this discretionary power he may permit an intervener, who is by statute at least a proper contestee, to intervene and make such defense as the statutes may authorize in purely election contests.

[3] Along with the submission of the case we also took under submission appellants' motion to certify such of the questions here raised as we saw fit to the Supreme Court. The grounds for the motion are: The importance of the questions involved; and that there is a conflict of decisions among the Courts of Civil Appeals concerning the extent of the jurisdiction of the district court to hear and determine election contests. It has been the policy of this court not to certify questions to the Supreme Court, unless some special reason exists for such action. In adopting this policy we feel that we are only carrying out the purposes of the law creating the court. This case arose and came to us in the regular course of procedure, and, although the questions submitted are important, our decision will not deprive the appellants of the right to have them passed upon by the Supreme Court, if that court sees proper to assume jurisdiction of the case. If the jurisdiction of this court is final by reason of the provisions of the statute in such matters, then, of course, we are only performing the duties for which it was created. This course, in the event the Supreme Court does not assume jurisdiction, will expedite the final disposition of the case rather than delay it, since the time required to certify will be eliminated in the event the Supreme Court does not assume jurisdiction; and, if it does, only the time necessary for us to dispose of the case after submission is involved.

[4] Appellants assert that the opinions in McCall v. Lewis, 263 S. W. 325, and Bassel v. Shanklin, 183 S. W. 105, by this court, and Turner v. Allen, 254 S. W. 630, by the Beaumont court, on the one hand, are in conflict with the opinions in Kidd v. Truett, 28 Tex. Civ. App. 618, 68 S. W. 310, by the Dallas court, and Scarbrough v. Eubank, 52 S. W. 569, and Oxford v. Frank, 30 Tex. Civ. App. 343, 70 S. W. 426, by the Fort Worth court, on the other hand, as to the matters over which district courts may assume jurisdiction in election contests. We cannot agree with appellants' contention that any conflict exists in these cases. In the recent case of McCall v. Lewis, supra, this court reached the conclusion that the statutes relating to election contests did not authorize a contest on the ground that the law under which the election was held was void, or that it did not authorize such an election as was held, but that it could be contested only for some statutory reason, showing that it was not properly or fairly conducted, or that illegal votes were cast, or for some other matter impeaching the fairness of the result declared. In announcing this rule of law we followed the case of Bassel v. Shanklin, supra. We also took the view there that, since the Supreme Court had held in the case of Odell v. Wharton, 87 Tex. 173, 27 S. W. 123, that the 1891 amendment to the Constitution, conferring general jurisdiction on district courts to try election contests, was not self-executing, and further, that election contests were not civil suits, that district courts had jurisdiction in election contests of only such matters as the enabling act to the constitutional amendments authorized. The enabling act to the 1891 constitutional amend-

ment is title 49, chapter 8, Revised Statutes, under the provisions of which appellants have instituted this proceeding. In other words, it was our view that, if the Constitution did not authorize an election to be contested under the general power conferred on district courts by the 1891 constitutional amendment for any grounds that might be raised, and if an election contest did not constitute a civil suit, thereby fixing the grounds of contest, then the authority to contest an election must be confined to the specific grounds provided in the statutes relating to that subject.

The following authorities hold that an election contest is a special proceeding authorized by the statute, and courts are limited in their investigation to such subjects as are specified in the statutes. Wright v. Fawcett, 42 Tex. 206; Rogers v. Johns, 42 Tex. 340; Bassel v. Shanklin (Tex. Civ. App.) 183 S. W. 105; Canales v. Mullen (Tex. Civ. App.) 185 S. W. 420; Norman v. Thompson, 96 Tex. 250, 72 S. W. 62; Kilgore v. Jackson, 55 Tex. Civ. App. 99, 118 S. W. 819; McCall v. Lewis (Tex. Civ. App.) 263 S. W. 325; Turner v. Allen (Tex. Civ. App.) 254 S. W. 630; Odell v. Wharton, 87 Tex. 173, 27 S. W. 123.

Since the statutes are the only authority for an election contest, we look to them for the specific reasons or grounds of contest. Article 3077, Revised Statutes, provides:

"If the contest be for the validity of an election held for any other purpose than the election of an officer or officers in any county or part of a county or precinct of a county, or in any incorporated city, town or village, any resident of such county, precinct, city, town or village or any number of such residents, may contest such election in the district court of such county in the same manner and under the same rules, as far as applicable, as are prescribed in this chapter for contesting the validity of an election for a county office."

"Art. 3062. *Fraudulent Votes Not to be Counted.*—If, upon the trial of any contested election case, any vote or votes be found to be illegal or fraudulent, the court trying the same shall subtract such vote or votes from the poll of the candidate who received the same, and after a full and fair investigation of the evidence shall decide to which of the contesting parties the office belongs."

"Art. 3063. *Election to be Declared Void, When.*—Should it appear on the trial of any contest provided for in article 3054 that it is impossible to ascertain the true result of the election as to the office about which the contest is made, either from the returns of the election or from any evidence within reach, or from the returns considered in connection with other evidence, or should it appear from the evidence that such a number of legal voters were, by the officers or managers of the election, denied the privilege of voting as, had they been allowed to vote, would have materially changed the result, the court shall adjudge such election void, and direct the proper officers to order another election to fill said office; which election shall be ordered and held and returns thereof made in all respects as

273 S.W.—64

required by the general election laws of the state."

The only other mention of grounds for an election contest in this enabling act is article 3078a, Vernon's Sayles' Ann. Civ. St. 1914, which relates to the manner of contesting elections on proposed amendments to the Constitution, and it reads in part:

"The court shall permit contestants to amend their petition, include therein allegations charging fraud, irregularity or mistakes, upon such terms as to the court may seem just, and likewise the contestees shall have the right both to contest the charges made by the contestant and to make counter charges, but the court shall bring the parties to issue with all possible dispatch."

The Court of Civil Appeals at Beaumont, in the recent case of Turner v. Allen, supra, construed these statutes as limiting the jurisdiction of the district court in election contests to an inquiry into matters happening on the day of the election. We quote the following from that opinion:

"In an election contest in the district court, under the statutory provisions of this state, the authority and jurisdiction of the court is limited and confined in the inquiry to matters happening on the day of election, and pertaining strictly to the election, such as the casting and counting of the ballots, and the actions and conduct of the officers holding the election. The contestant must succeed or fail according to the result of the inquiry touching such matters only. Articles 3062 and 3063, Revised Statutes; Canales v. Mullin (Tex. Civ. App.) 185 S. W. 420; Cofield v. Britton (Tex. Civ. App.) 109 S. W. 493; Bassel v. Shanklin (Tex. Civ. App.) 183 S. W. 105; Norman v. Thompson, 96 Tex. 250, 72 S. W. 63; Lowery v. Briggs (Tex. Civ. App.) 73 S. W. 1062; Kilgore v. Jackson, 55 Tex. Civ. App. 99, 118 S. W. 819, 823."

The cases cited by appellants as being in conflict with these three above decisions do not present a conflict. In the case of Scarbrough v. Eubank, the contested election was a county seat removal election, and it was there held by the Court of Civil Appeals that in a proceeding to contest county seat removal elections the sufficiency of the petition on which the election was ordered might be determined. This was the sole question involved in that case, and was later certified to the Supreme Court, where that holding was reversed, and the Supreme Court held that the validity of an election for the removal of a county seat cannot be contested upon the ground that the county judge had no authority to order the election, because the applicants for the election who were not disqualified were less than the number required by the statute. The Supreme Court's answer to the certified question is reported in 93 Tex. 106, 53 S. W. 573, and expressly pretermits a discussion of the general question of what matters may be inquired into in a purely election contest proceeding. We think

the Supreme Court's limitation or refusal to permit preliminary proceedings to an election to be the subject of inquiry in election contests rather supports the view that we take of this question than the contention of appellants. Election contests for removal of county seats have been by some courts construed to be in the nature of a contest of a local option election, and are to that extent distinguishable from the contest in question.

In the case of Kilgore v. Jackson, 55 Tex. Civ. App. 106, 118 S. W. 822, the Court of Civil Appeals say:

"We are not inclined to hold that the proceedings and judgment in the contest proceeding brought by parties other than plaintiffs in this case can be urged as a bar to the present proceeding. That was a special proceeding which could only be instituted by residents of the county. Articles 1804t, 1804u, Rev. St. We are inclined to think that the doctrine announced by the Supreme Court in Norman v. Thompson, 96 Tex. 250, 72 S. W. 62, applies to a contest of an election for the location of a county seat. The contest in that case was of a local option election under a statute relating alone to such elections. After' quoting the statute (article 3397) the court says: 'As used in the foregoing article, the term "election" means the act of casting and receiving the ballots from the voters, counting the ballots, and making returns thereof. State v. Tucker, 54 Ala. 210. That is the meaning of the word "election" in ordinary usage, and it must be so construed; there being nothing in the law to suggest that the Legislature intended to use it in a different sense. On the contrary, wherever the word "election" appears in the acts of the Legislature upon this subject, it seems to have in view those things to be done on the day of the election in contradistinction to the acts which are to be done preparatory to the election.' It would appear that the word 'election,' as used in the statute under which the contest of this county seat election was instituted, was used in the same sense, and, if so, in such contest nothing could have been properly inquired into except what occurred on the day of election, and there could not properly have been adjudicated in that case the issues presented in the present case."

A writ of error was refused by the Supreme Court in that case, and the doctrine announced conclusively supports our holding in McCall v. Lewis, supra, and Bassel v. Shanklin, supra.

The other two cases cited by appellants as being in conflict with our decision in the McCall-Lewis Case involve contests of local option elections, the grounds of contest of which are provided by separate articles of the statute than the ones appellants are proceeding under here, and for this reason those cases cannot be in conflict. Article 3397 of the 1895 Revised Statutes provides the grounds upon which a local option election may be contested, which is a separate and distinct statute from the statutes under which appellants brought this proceeding. It is true that in the case of Kidd v. Truett, the Court of Civil

Appeals construed the general election contest statutes and article 3397, and held that an election could be contested upon the ground that it had not been legally ordered or held for the purpose or within the territory for which it was held; and a writ of error was dismissed in that case because of want of jurisdiction of the Supreme Court.

In the other case of Oxford v. Frank, supra, the suit was brought to contest a local option election under article 3397 of the Revised Statutes of 1895, and also a bill in equity was sought to restrain the publication of the election results. No application for a writ of error was made in that case. It was held there that the district court had jurisdiction to try a contest of a local option election on a ground going to its validity, though not specified in article 3397 of the Revised Statutes. But both of those cases seem to be in conflict with the opinion of the Supreme Court in the case of Norman v. Thompson, 96 Tex. 253, 72 S. W. 62, which was rendered after er both of them had been finally disposed of. Norman v. Thompson was a contested local option election case, in which the Supreme Court construed article 3397, and held:

" 'The contest of an election is a special proceeding authorized by the statute, and the courts are limited in their investigation to such subjects as are specified in the law. Wright v. Fawcett, 42 Tex. 206; Rogers v. Johns, 42 Tex. 340. The following article of the Revised Statutes prescribes the ground of contest: [Article 3397 follows].'

"As used in the foregoing article, the term 'election' means the act of casting and receiving the ballots from the voters, counting the ballots and making returns thereof. State v. Tucker, 54 Ala. 210. That is the meaning of the word 'election' in ordinary usage, and it must be so construed, there being nothing in the law to suggest that the Legislature intended to use it in a different sense. On the contrary, wherever the word 'election' appears in the acts of the Legislature upon this subject it seems to have in view those things to be done on the day of the election, in contradistinction to the acts which are to be done preparatory to the election.

"Article 3397 expresses the policy of the Legislature to be, that a law of this character shall not be put into force, unless the election has been fairly conducted and resulted in a fair expression of the will of the voters. To accomplish this end the statute confines the inquiry to those proceedings which are directly connected with the conducting of the election itself. The posting of the notices of election not being embraced in the terms of the statute, the failure to post one of such notices for twelve days prior to the election constitutes no ground for a contest of election. We answer the first question in the negative."

If the general enabling statutes putting in force the constitutional amendment authorizing district courts to assume jurisdiction of election contests had been applicable to local option election contests, the Supreme Court in discussing that case most likely

would have adverted to those statutes. Therefore we can safely conclude that local option election contests were controlled by a specific statute on that subject. A decision of a contest under that statute would not be in conflict with a decision of a contest of an election under the statutes here involved. Our conclusion in this matter is further strengthened by the fact that the Legislature in 1907 amended article 3397 of the Revised Statutes of 1895, by what is now article 5728 of V. S. C. S. 1914, in which it is specifically provided that local option elections may be contested on the specific grounds that the Supreme Court held in Norman v. Thompson, supra, they could not be contested on, thus evidencing conclusively on the part of the Legislature that they intended to add to the previous statutes other grounds upon which a local option election could be contested. So we submit that these cases do not present any conflict with the rule announced in the first three cases cited.

[5] This being our view of the law, we have concluded that the following propositions or questions urged by appellants cannot be considered, since the district court had no jurisdiction to determine them in this, an election contest:

"(2) That the 22 propositions, being submitted without the initiation of a charter commission, violate the statute, and are illegal and void.

"(3) That the statute does not permit a city council of its own initiative without a charter commission to submit propositions to repeal vital and fundamental parts of a charter; the right to submit 'amendments' not including more than mere amendments.

"(4) That the essential propositions, as fully shown hereinbefore, violate the statute in submitting in single propositions more than one subject.

"(5) That the 22 propositions are void because they do not refer to or identify the public statute proposed to be repealed, changed, and amended.

"(6) That certain propositions, fully pointed out hereinbefore, violate the Constitution, art. 3, § 36, in undertaking to revive and amend sections of a statute without re-enacting and publishing same at length."

These propositions represent appellants' propositions 3 to 8, both inclusive, as set forth in their brief.

[6] Appellants' ninth proposition reads:

"Under the statute (article 1096b) putting the home rule amendment to the Constitution into effect before any proposed amendment shall become a part of the charter of a city, such proposed amendment must be approved by the majority of the qualified voters voting at said election.

"The phrase 'majority of the qualified voters voting at said election,' being susceptible of but one construction, according to its plain words, forbids an amendment from being declared adopted upon a less number of votes than such 'majority of the qualified voters voting at said election.'"

This question can be properly determined in an election contest proceeding, since it was a part of the duties of the election officers on the day of the election and as a part of the election procedure to determine what vote the statutes required each amendment to receive before it should be declared carried, in order that a proper return of the results might be made. The question therefore resolves itself into an inquiry of whether or not the election officials properly, legally, and fairly made true returns of the results of the election held.

[7] It appears from the record in this case that a total of 4,939 qualified voters voted at the election in question, and that no one of the amendments voted on received a majority of 4,939 votes; but that each amendment received more votes in its favor than were cast against it. The trial court held that it was only necessary for each amendment submitted to receive more affirmative than negative votes. The appellants contend that article 1096b, Vernon's Sayles' Ann. Civ. St. 1914, putting into effect the home rule amendment to the Constitution, requires that any proposed amendment to a city charter must be "approved by a majority of the qualified voters, voting at said election," before being declared adopted. Intervener contends that the statutes in question, when construed with relation to the context, contemplate that at an election held for the purpose of determining whether or not several separate and distinct amendments to a city charter shall be adopted the result on each amendment shall be determined by the vote cast for and against such amendment, irrespective of the number of voters participating in the election on all the amendments.

The appellants in support of this proposition cite the following authorities from other states: Stebbins v. Judge Sup. Ct., 108 Mich. 693, 66 N. W. 594; State v. Hugo, 84 Minn. 81, 86 N. W. 784; High School v. Commission, 61 Kan. 800, 60 P. 1057; People v. Wiant, 48 Ill. 263; Hogg v. Baker (Ky.) 31 S. W. 726; City of Santa Rosa v. Bower, 142 Cal. 299, 75 P. 829; 10 Am. & Eng. Enc. of Law, 756; Armour Bros. Banking Co. v. board of County Com'rs of Finney County (C. C.) 41 F. 321. It is contended by appellants that these cases construe somewhat similar constitutional and statutory provisions to the ones here involved, and assert that there is no conflict in other jurisdictions concerning the correctness of their contention on the question here presented. An examination of these authorities reveals that they are not in harmony on the question, because the phraseology of the various constitutional and statutory provisions construed differ, and therefore furnishes no authority for each other, or for the question here raised, because none of them construe a statute worded like ours.

The difficult question in each of those cases, like the one here presented, was to determine from the specific language used the clear intention of the Legislature. We think that no good purpose can be served here by entering into a discussion of these authorities, since none of them construe statutes worded like ours.

Appellants also cite in this connection the case of School District v. McElroy, 103 Tex. 64, 123 S. W. 117. This authority merely holds that it is the first duty of courts in determining the proposition here raised to examine the Constitution and the statute and determine therefrom the legislative intent, for every decision on this question must at last depend upon the language of the particular statutory provisions being construed. The Supreme Court in that case pretermitted, as useless, a discussion of the decisions of other states on the proposition here presented, for the reason that the constitutional and statutory provisions construed by them were not worded like ours, stating that a "discussion of the decisions of other states would therefore simply be the discussion of questions different from that before us. So we have determined to follow the rule of the Supreme Court in that case and decide this case from a construction of the statutory provisions here involved.

Article 1096b, Vernon's Sayles' Ann. Civ. St. 1914, is a part of the enabling act putting in effect the home rule amendment to the Constitution. It deals with the subject of adoption and amendment of municipal charters, and provides the procedure therefor. The first part of the article provides for the submission to the voters whether or not a commission shall be chosen to frame a new charter, and the question is declared adopted, "provided, that a majority of the qualified voters, voting on such question shall have voted in the affirmative." There is nothing complicated or difficult about the language nor the subject with which it deals, for it only authorizes the submission of one proposition to be voted upon at one election held for that purpose, and, of course, it was a simple thing to say that a majority of the "qualified voters voting * * * in the affirmative" on the one question submitted should determine it.

This provision is followed by another for the submission to the voters the work of the charter commission, that is, the charter itself, for adoption, and it is further provided that, "if such proposed charter is approved by a majority of the qualified voters, voting at said election, it shall become the charter of said city, * * * provided that in preparing the charter the commission shall, as far as possible, segregate each subject so that the voters may vote 'yes' or 'no' on same."

Following the provision for submitting the complete charter of the commission for adoption is that portion of the statute providing for the submission of an amendment or amendments to the voters for adoption or rejection, and the statute declares the amendment or amendments adopted, "if approved by the majority of the qualified voters voting at said election," and in this connection the statute further provides:

"Each and every amendment or amendments submitted must contain only one subject, and in preparing the ballot for such amendment or amendments, it shall be done in such manner that the voters may vote 'Yes' or 'No' on any one amendment or amendments, without voting 'Yes' or 'No' on all of said amendments."

The Supreme Court in School District v. McElroy, supra, employs the following method in arriving at its decision in that case:

"The entire provision satisfied us that the rule has been adopted which ordinarily prevails in elections, which is that the result as to a question or proposition submitted is determined by the vote given upon it, and not by that upon others."

Applying the rule here, we have concluded from the language used in the statutes as above quoted that it was the intention of the Legislature that each proposed amendment should be by the voters considered separately, and the result as to each is to be determined from the votes cast for or against it, irrespective of the total number of votes that may be cast at an election submitting several separate and distinct amendments to a city charter. By construing the entire provisions of the statutes in the light of what has been adopted as the rule ordinarily prevailing in elections where constitutional amendments were submitted at elections where other matters were being voted upon, and in school district elections where several separate and distinct propositions were being voted upon, which is that the result as to a question or proposition submitted is determined by the vote given upon it and not by the vote upon other questions, we have reached the conclusion and are satisfied that the Legislature in passing these statutes intended that each amendment to a city charter should be considered separately and its adoption controlled by the votes cast for and against the specific amendment. To hold that each amendment must be adopted by a majority of all the votes cast at an election where several amendments are being voted upon would be nothing less than declaring that each voter voting at such election must vote on each of the amendments submitted, and, failing to so vote, his vote would be counted as a negative vote on the amendment not voted upon. This, of course, would be in direct conflict with that portion of the statute which requires that "in preparing the ballot for such amendment or amendments it shall be done in such a manner that the voters may vote 'Yes' or 'No' on any one

amendment or amendments, without voting 'Yes' or 'No' on all of said amendments." We think it would be without reason to construe this language to mean that, although the Legislature provided that voters, at an election where several amendments to a city charter were being submitted, do not have to vote upon all the amendments submitted, yet if they do not so vote, their ballot cast on other amendments will be counted as a negative vote on each amendment not voted upon. This would result if the majority rule contended for by appellants was enforced in this case.

[8] It is a well-established rule in Texas that a construction leading to absurd results and invalidity will not be applied, if the language is susceptible of another application which will preserve all of the law intact. Fenet v. McCuiston, 105 Tex. 299, 147 S. W. 867; Staples v. State, 112 Tex. 61, 245 S. W. 639; Witherspoon v. Jernigan, 97 Tex. 98, 106, 76 S. W. 445; Shipley v. Floydada Independent School District (Tex. Com. App.) 250 S. W. 159.

Applying that rule here, it is not a far-fetched construction to say that the Legislature intended by the use of the language "that the voters may vote 'Yes' or 'No' on any one amendment or amendments, without voting 'Yes' or 'No' on all of said amendments," to mean that each amendment should be considered separately and should stand or fall upon the votes cast for and against it.

The Dallas court of Civil Appeals, in the case of Shaw v. Lindsley, 195 S. W. 338, reached the same conclusion that we have reached in regard to a construction of these statutes on the identical question before us, from which opinion we quote the following:

"We conclude from the authorities that each amendment is separate, and the result as to each is to be determined from the votes cast for or against it."

[9] It is the policy of the law to uphold the declared results of elections where it is shown that they have been properly and fairly conducted. Johnston v. Peters (Tex. Civ. App.) 260 S. W. 911. The trial court in this case upon the motion of appellants, after due and proper proceedings, caused the ballot boxes to be opened, and again carefully counted the votes cast in all wards where any question had been raised which in any way reflected doubt upon the correctness or fairness of the results declared, and in each instance the election officials' declaration of the results was sustained by the ballots themselves, and in most instances a net gain was recorded on each amendment voted upon from the results declared by the returning officials. The fairness of the recount of the ballots by the trial court is in no way attacked, and, since by that recount any question as to the fairness of the election and of the results declared has been decided in favor of the results as declared, we have concluded that the remaining propositions presented by appellants are without merit, and are overruled, and the judgment of the trial court is affirmed.

Affirmed